**FEDERAL DEPOSIT INSURANCE CORP., Plaintiff-Appellant,**

v.

**Henry E. McCLANAHAN, Defendant-Appellee.**

No. 85–1603.

United States Court of Appeals, Fifth Circuit.

July 30, 1986.

---

Scott Morse, Sharp & Morse, Robert I. Howell, Austin, Tex., for plaintiff-appellant.

\* District Judge of the Eastern District of Michi-

Jeralynn (Jackee) Cox, Hannah & Guthrie, Judith K. Guthrie, John Hannah, Tyler, Tex., for defendant-appellee.

Before GEE, HIGGINBOTHAM, Circuit Judges, and HARVEY \*, District Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Hoping to get a bank loan, the defendant recklessly signed a blank promissory note and delivered it to a man he knew had been convicted of bank fraud. When the bank failed, it was discovered that the note had been filled in to reflect a loan that the defendant never received. We hold that under the rule of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the defendant was estopped from asserting failure of consideration or fraud in the inducement when the FDIC, acting as receiver for the failed bank, sued on the note.

I

The sad story of farmer Henry McClanahan began when he had the bad fortune or bad judgment to get acquainted with a shady character named Orrin Shaid, who has been described as a "charismatic 300-pound east Texan" and who was certainly a crook. Though he knew that Shaid had been convicted of bank fraud, McClanahan served briefly as a director of Ranchlander Bank, which Shaid had purchased, in the name of his paramour, with money he raised through a fraudulent loan-pyramiding scheme. *See generally United States v. Shaid,* 730 F.2d 225, 227–29 (5th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 151, 83 L.Ed.2d 89 (1984); *Charter Bank Northwest v. Evanston Insurance Co.,* 791 F.2d 379 (5th Cir.1986).

Sometime after his brief service as a director, McClanahan sought a loan of about $31,000 from Ranchlander Bank in order to purchase a tractor. Shaid, repre-

gan, sitting by designation.

senting himself as the owner of the bank, persuaded McClanahan to sign a blank note with the understanding that the exact terms would be filled in later. Shaid later told McClanahan that the loan application had been turned down, and McClanahan financed the tractor through separate bank loans to his brother and a friend. McClanahan never requested the return of the blank note he had signed.

Meanwhile, Shaid filled out the blank note to reflect a $62,500 loan from Ranchlander Bank to McClanahan, secured by cattle, and took the money for himself. Some months later, McClanahan received a notice from Ranchlander Bank informing him that a $62,500 note was due and that he should come in to sign a renewal note. Rather than doing so, McClanahan told Shaid about the notice, and Shaid said he would take care of it. Take care of it he did: Shaid, or someone with whom he was in cahoots, forged McClanahan's signature to a renewal and extension note in the amount of $86,000.

After an accomplice turned Shaid in to the FBI, Ranchlander Bank was declared insolvent. The FDIC was appointed receiver of the bank, and it brought the present action against McClanahan on the $62,500 promissory note that bore his signature. McClanahan raised the affirmative defenses of failure of consideration and fraudulent inducement. The FDIC responded by asserting that McClanahan was estopped from relying on these defenses by *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The district court held that *D'Oench, Duhme*

was inapplicable because in that case, unlike this one, the parties to the note had made a "secret agreement" according to which the terms of the note were to be other than those stated on the face of the note. As the district court pointed out, McClanahan could not have entered into exactly this kind of secret agreement for the simple reason that he was not aware of the terms that Shaid had inserted on the face of the note. The district court also pointed out that in *D'Oench, Duhme*, the rule of estoppel was being applied against a person who had *knowingly* participated in a scheme that was likely to mislead government bank examiners. Finally, the district court noted that Congress has enacted a statutory rule, similar to the estoppel rule of *D'Oench, Duhme*, for cases in which the FDIC has acquired notes in its corporate capacity, *see* 12 U.S.C. § 1823(e), but has neglected to codify *D'Oench, Duhme* insofar as it applies to cases, like this one, in which the FDIC is acting as a receiver;[1] the district court inferred that the perceived need to protect the FDIC is greater in the one situation than in the other.

After a bench trial, the court concluded that McClanahan had been fraudulently induced to sign the blank note and that there was a failure of consideration. Judgment was entered for the defendant, and the FDIC appeals.

**II**

Because the district court's findings of fact are unchallenged, the question before

---

**1.** In *D'Oench, Duhme* itself the FDIC had sued in its corporate capacity. The Court, however, relied on *Deitrick v. Greaney*, 309 U.S. 697, 60 S.Ct. 611, 84 L.Ed. 1036 (1940), a case involving the receiver of a national bank, and gave no indication that a different rule would be applied were the FDIC not acting in its corporate capacity. Accordingly, *D'Oench, Duhme* applies when the FDIC sues as a receiver. *See, e.g., FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974).

It has not been suggested that the enactment of § 1823(e) in 1950, as an amendment to the Federal Deposit Insurance Act, preempted the common law rule of *D'Oench, Duhme*. The discussion of the amendment in the legislative

history does not mention *D'Oench, Duhme, see* H.R.Rep. No. 2564, 81st Cong., 2d Sess. (1950), *reprinted in* 1950 U.S.Code Cong. & Ad.News 3765, 3774, and there is no reason to suppose that Congress intended to forbid the rule of estoppel from being applied when the FDIC sues as receiver of a failed bank. *Cf. City of Milwaukee v. Illinois*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) (congressional creation of comprehensive regulatory program precludes judiciary from maintaining a competing scheme of common law remedies); *id.* at 314, 101 S.Ct. at 1791 (quoting *D'Oench, Duhme*, 315 U.S. at 469, 62 S.Ct. at 684 (Jackson J., concurring)).

us is whether *D'Oench, Duhme* was correctly applied to this case.[2] That case, which was decided in the early years of the federal effort to develop a detailed regulatory and insurance framework for the banking industry, dealt with the problem of "secret agreements" between bank officials and the makers of notes held by the bank. In *D'Oench, Duhme* itself, a demand note for $5000 was executed in renewal of notes signed several years earlier. The original notes were meant to cover for certain bonds that had defaulted after the maker of the notes had sold them to the bank. The receipt for the notes contained the statement, "This note is given with the understanding it will not be called for payment. All interest payments to be repaid." The maker of the notes knew that their purpose was to save the bank from having to show the past due bonds among its assets. *See* 315 U.S. at 454, 62 S.Ct. at 678. Recognizing that such "accommodation agreements" would tend to frustrate the government's regulatory and insurance policies by making it difficult for bank examiners to rely on bank records, the Court established a rule under which the maker of a note is estopped from offering such a "secret agreement" as a defense to recovery by the FDIC.

The Supreme Court felt so strongly about the need to promote these federal policies that it provided for application of the rule of estoppel even in cases where the maker was "very ignorant and ill-informed of the character of the transaction," where the maker "may not have intended to deceive any person," and where "creditors may not have been deceived or specifically injured." 315 U.S. at 458–59, 62 S.Ct. at 680 (citations omitted). "[I]t is the 'evil tendency' of the acts to contravene the policy governing banking transactions which lies at the root of the rule." *Id.* at

459, 62 S.Ct. at 680 (citations omitted). The Court concluded:

> It would be sufficient in this type of case that the maker *lent himself* to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled.

315 U.S. at 460, 62 S.Ct. at 681 (emphasis added).

*D'Oench, Duhme* has not been read to mean that there can be no defenses at all to attempts by the FDIC to collect on promissory notes. For example, the FDIC does not contend that it could have sued McClanahan on the $86,000 note to which his signature had been forged. Similarly, where the note imposes bilateral obligations on the parties, rather than creating a unilateral obligation by the maker to pay a sum certain, courts have held that the maker may defend himself by contending that the bank breached its obligations under the note. *See, e.g., Howell v. Continental Credit Corp.,* 655 F.2d 743 (7th Cir.1981); *Riverside Park Realty Co. v. FDIC,* 465 F.Supp. 305 (M.D.Tenn.1978).

Similarly, in *FDIC v. Meo,* 505 F.2d 790 (9th Cir.1974), the defendant had executed a promissory note in order to acquire shares of the bank's common stock; the bank was to keep possession of the stock as security for the loan. The bank's president improperly arranged for the issuance of voting trust certificates instead of common stock, but Meo did not find out about the misissuance until the bank collapsed and he was sued by the FDIC on his note. Observing that federal policy favors bank depositors over bank borrowers, the district court held that the estoppel rule of *D'Oench, Duhme* applied because the borrower's innocence is not significant. The Ninth Circuit reversed, holding that be-

---

**2.** McClanahan contends that the judgment of the district court can be affirmed on the ground that the $62,500 note was superseded by the forged $86,000 note and thus was not an asset of Ranchlander Bank at the time the bank failed. Although we are not aware of any federal authority on this question, the FDIC points out that under Texas law the renewal of a note

leaves the holder of both notes free to sue on either of them unless novation is proven. McClanahan does not dispute this proposition. Because he does not, and indeed cannot, contend that the parties intended for the $86,000 note to extinguish the $62,500 note, we find that the $62,500 note was an asset of the bank when it failed.

cause the maker was "wholly innocent," and was "not negligent in failing to discover the manner in which the stock order was actually executed," the rule of estoppel would not apply.

The present question, which is apparently one of first impression in this circuit, concerns the application of the rule of *D'Oench, Duhme* to a maker who signed a blank promissory note with the understanding that it would later be filled in to reflect the terms of a loan that he in fact never received. In *FDIC v. Hatmaker*, 756 F.2d 34 (6th Cir.1985), the court confronted a similar situation under 12 U.S.C. § 1823(e), which provides: "No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing...." In *Hatmaker*, the defendant signed a blank note with the understanding that it would be filled in to reflect a $12,000 bank loan, which he received. When the bank failed, it was discovered that the note had been filled in to reflect a loan of $60,207. The Sixth Circuit held that the oral agreement, under which the note was to have been filled in for $12,000, would "tend to diminish" the interest of the FDIC in the note because it would make the note at least partially invalid; since this oral agreement did not comply with the requisites of § 1823(e), the court held it unenforceable under the statute. 756 F.2d at 37. The reasoning in *Hatmaker* was recently adopted by this court in *FDIC v. Castle*, 781 F.2d 1101, 1106–08 (5th Cir.1986), which noted wide support for it in other cases.[3]

*Hatmaker*, *Castle*, and similar cases have relied on the literal language of the statute that governs situations in which the FDIC is suing in its corporate capacity as an insurer. This literal language is not available in the case before us, and we must apply the common law rule of *D'Oench, Duhme*, which governs when the FDIC sues in its capacity as receiver. The result, though not the analysis, is the same.

When the FDIC sues in its corporate capacity, a failure to recover from the defendant causes a loss to the FDIC itself; when the FDIC sues as receiver, victory for the defendant will ordinarily mean a loss that is borne or shared by the uninsured creditors or depositors of the failed bank. We are persuaded that Henry McClanahan, rather than the FDIC or the innocent depositors or creditors of the failed bank, must bear the consequences of his unfortunate involvement with Orrin Shaid. Even assuming that McClanahan was not in complicity with Shaid, which would certainly have estopped him from defending this suit on the basis of failure of consideration or fraud in the inducement, his conduct can only be characterized as reckless. McClanahan signed and delivered a blank promissory note to a man he knew had been convicted of bank fraud. When the loan for which that note had been given was refused, McClanahan failed to take any steps to recover the executed note, even though his usual practice was to request the return of promissory notes after he paid off the loan for which they had been given. Upon being notified by the bank that the note was due, McClanahan's only response was to mention it to his acquaintance, the convicted criminal.

It may be possible to imagine circumstances in which—whether because of prevailing business practices or the maker's extreme lack of sophistication—the signing of a blank note could be so wholly innocent as to preclude the FDIC from requiring on that basis alone that the maker be estopped from defending himself on grounds of failure of consideration and fraud in the in-

---

**3.** *See also FDIC v. Langley* 792 F.2d 541 (5th Cir.1986).

In *FDIC v. Powers*, 576 F.Supp. 1167, 1171–72 (N.D.Ill.1983), *aff'd*, 753 F.2d 1076 (7th Cir. 1984), the district court stated that similar reasoning would govern the application of *D'Oench, Duhme* to a "blank note" situation, but the holding of the case appears to have rested on the application of § 1823(e).

ducement.[4] This is not such a case. We hold that McClanahan "lent himself to a scheme or arrangement whereby the [appropriate] banking authority ... was or was likely to be misled," 315 U.S. at 460, 62 S.Ct. at 681, and that he may not now escape the obligations that appear on the face of the note that he signed. On remand, the district court will enter an appropriate judgment for the FDIC.

REVERSED.

---

**4.** *Cf. FDIC v. Meo*, 505 F.2d 790, 792 (9th Cir. 1974) (where defendant "was a completely innocent party with respect to the bank's improper execution of an agreement" and where the defendant "was not negligent in failing to dis-

cover" the improper execution, the estoppel rule of *D'Oench, Duhme* would not be applied to prevent him from relying on the defense of failure of consideration").