**In re Roy D. HUNTER, Debtor.**

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, acting in its limited capacity as receiver for Mainland Savings Association, Plaintiff,**

**v.**

**Roy D. HUNTER, Defendant.**

**Bankruptcy No. 88–02471–G5–11.
Adv. No. 88–0550.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

May 24, 1989.

---

A. Lee McLain, for debtor; McLain, Cage, Hill & Niehaus, Houston, Tex., of counsel.

Lee R. Larkin and Suzanne M. Byerly, Houston, Tex., for FSLIC.

## MEMORANDUM OPINION GRANTING PARTIAL SUMMARY JUDGMENT

MARGARET A. MAHONEY, Bankruptcy Judge.

Came on to be heard the motion for summary judgment of the Federal Savings & Loan Insurance Corporation (FSLIC) as receiver for Mainland Savings Association against the debtor, Roy D. Hunter. After consideration of the pleadings, legal memoranda and argument of counsel, I enter this memorandum order granting partial summary judgment in favor of FSLIC for purposes of trial. I have jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334, and 28 U.S.C. § 157(b)(2)(B) and (C).

Pursuant to Fed.R.Civ.P. 56 and B.R. 7056, I grant partial summary judgment in favor of FSLIC under application of the *D'Oench Duhme* doctrine as explained below. As to those issues subject to my granting of this summary judgment, I conclude that there are no genuine issues of material fact and that summary judgment is appropriate as a matter of law. The facts and legal issues are established for trial as set out below.

## I. FACTUAL BACKGROUND OF THE LOAN TRANSACTION BETWEEN ROY D. HUNTER AND MAINLAND SAVINGS ASSOCIATION.

Roy D. Hunter, executed two promissory notes in favor of Mainland Savings Association (Mainland) in October of 1985. The loans were obtained by Hunter in order to finance the development of certain Galveston real property into a residential subdivision. Note I was executed by Hunter to Mainland in the principal amount of $1,328,400. Note II was executed by Hunter to Mainland in the principal amount of $1,045,000. Both of the notes were secured by deeds of trust and security agreements upon the Galveston real property. Along with the deeds of trust and security agreements, Hunter and Mainland executed two identical pre-development loan agreements which set forth obligations of both Hunter and Mainland in connection with the two loans. Both pre-development loan agreements provided for funding by Mainland, upon application of Hunter, of the interest due on the notes, as well as certain other development costs. The pre-development agreements provided that the principal balance on each note would be due in 1988.

Hunter began development of the Galveston real property and in the course of development submitted draw requests as specified in the pre-development loan agreements on a monthly basis. Upon receipt of requests, Mainland routinely paid the accrued interest charges on Notes I and II pursuant to paragraph 7 in the pre-

development loan agreements. Hunter was never declared in default under the terms of the notes from October 1985 through March 25, 1986.

On March 26, 1986, Hunter submitted a monthly draw request. Mainland refused to fund this request and failed to pay the interest as it had done in past months.

On April 4, 1986, FSLIC was appointed receiver for Mainland by the Federal Home Loan Bank Board (FHLBB). As a part of its statutory duties in connection with a failed financial institution, FSLIC, as receiver took title to Mainland's assets. After FSLIC took over Mainland and its assets in its position as receiver, the application for the draw which Hunter had submitted to Mainland, was still not funded. FSLIC was aware of the provision in the predevelopment loan agreements between Hunter and Mainland but continued to refuse to fund the interest payment.

As a result of the nonpayment of interest on Notes I and II, FSLIC declared the notes in default and subsequently foreclosed upon the Galveston property in December 1986. FSLIC was the purchaser at the foreclosure sale.

## II. PROCEDURAL BACKGROUND OF THE CLAIMS BETWEEN HUNTER AND FSLIC.

Subsequent to the foreclosure on the property, FSLIC filed a deficiency suit against Hunter to collect the amount due and owing on the notes after the sale of the collateral at foreclosure. The case was filed in United States District Court for the Southern District of Texas on July 23, 1987. Hunter asserted a number of affirmative defenses and counterclaims to the lawsuit.[1] The case was subsequently re-

moved to this court after Hunter filed his petition in bankruptcy.

Prior to Hunter's Chapter 11 petition, he filed a request for relief with the FHLBB seeking to prevent FSLIC's recovery of the deficiency amount in the District Court lawsuit. Hunter also filed an appeal of a previously rendered decision by FSLIC as receiver disallowing Hunter's claim against it. These actions resulted in a March 11, 1988 decision by the FHLBB which denied Hunter's appeal of the FSLIC disallowance of his claim and dismissed Hunter's request for injunctive relief to prevent the deficiency suit by FSLIC from going forward.[2]

Hunter in his answer filed in this case, admits the amount of the notes which he executed in favor of Mainland. As affirmative defenses, Hunter asserts claims of fraudulent and wrongful inducement arising from representations by Mainland officers and representatives in connection with the notes and the manner in which they were to be repaid. Hunter also asserts that FSLIC breached the predevelopment loan contract by failing to make the requested disbursement of funds and pay the interest payment upon his application, and that as a result of such breach that the foreclosure by FSLIC was wrongful. Hunter also argues that the foreclosure was wrongful because he was not actually in default at the time that FSLIC accelerated the loans. Hunter additionally asserts that the foreclosure sale was not commercially reasonable primarily because the property was sold at a price which he believes was far below its fair market value at the time of the sale. As a counterclaim, Hunter asserts that FSLIC improperly accelerated the debt and foreclosed. Hunter also asserts wrongful repossession of collateral, breach of contract and fraud. Hunter additionally argues that in the

---

1. The District Court dismissed Hunter's affirmative defenses and counterclaims relying on *North Mississippi Savings and Loan Ass'n. v. Hudspeth*, 756 F.2d 1096 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). After removal to this court, I reinstated Hunter's affirmative defenses and counterclaims by my order of March 24, 1989. My reinstatement was based upon the recent U.S. Supreme Court decision, *Coit Independence*

*Joint Venture v. FSLIC*, — U.S. —, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989).

2. It should be noted that the dismissal of Hunter's request for injunctive relief was predicated on the FHLBB assumption that the District Court would consider Hunter's defenses. (*See* FHLBB Decision, Ex. B to Hunter Response to FSLIC Motion for Summary Judgment, at page 12, footnote no. 7.)

event judgment is granted for the counter-defendant, that he should be entitled to a setoff for the wrongful and noncommercially reasonable sale of collateral.

FSLIC sets forth a number of arguments in support of its motion for summary judgment. First, it argues that it has met the requisite burden of proof on the motion for summary judgment such that there are no genuine issues of material fact remaining and that FSLIC is entitled to summary judgment as a matter of law. Second, FSLIC argues that summary judgment is proper in this case because the loan documentation is unambiguous in that under the loan documents, the maker is primarily liable for all debt. Third, FSLIC argues that the affirmative defenses and counterclaims raised by Hunter in this answer are barred under the doctrine of res judicata by the decision of the FHLBB on Hunter's appeal and request for relief. Fourth, FSLIC argues that there was no breach of contract by it and that as such, it is not estopped from asserting its claims against Hunter under the notes. Fifth, FSLIC argues that the foreclosure sale was proper as a matter of law. Lastly and most importantly, FSLIC asserts that the *D'Oench Duhme* doctrine and federal common law bar the assertion of affirmative defenses and counterclaims by Hunter. The effect of such a bar would be to make summary judgment in favor of FSLIC proper as a matter of law.

## III.  ISSUES AND DISCUSSION OF THE LAW.

Although FSLIC has actually raised a number of arguments in support of its motion for summary judgment, the strongest argument in support of its position is presented in the case of *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The threshold issue which I will consider and which was raised by FSLIC is whether or not the counterclaims and affirmative defenses asserted

by Hunter in the deficiency suit are barred in this cause of action if *D'Oench Duhme* is applied. I will then consider the extent to which partial summary judgment applies to the facts presented in this case to establish certain issues for purposes of trial.

In *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court formulated a rule of federal common law in order to promote the public interest in preserving and protecting the FDIC from certain claims asserted by borrowers against the FDIC as successor in interest to a failed bank. Basically, the doctrine presents a bar to any claims or defenses asserted by a borrower which arise out of "secret or side agreements" between the borrower and officers or representatives of the failed bank which are not reflected in the loan documents in the lending files of the failed institution. One purpose for the doctrine is to facilitate the duties of the FDIC in its takeover of a failed financial institution by allowing it to rely only on the written records of the failed bank and by protecting it from extraneous claims and defenses of which the regulatory agency could have no knowledge. The test for application of the *D'Oench Duhme* doctrine to a particular case involves the question of whether or not there was a secret or side agreement between the failed bank and the borrower, which was designed to deceive either the bank's creditors or the public authority, which is being asserted as the factual basis for the borrowers' claims and defenses. *O'Oench Duhme* at 461, 62 S.Ct. at 681, *see, In re Valentine*, 93 B.R. 219 (Bankr.C. D.Cal.1988).

So strong is the public interest in protecting the FDIC in its duties in undertaking the rescue of a failed bank that Congress codified the *D'Oench Duhme* doctrine for FDIC acting in its corporate capacity in the acquisition of assets through purchase and assumption transactions.[3]  12  U.S.C.

---

**3.**  A purchase and assumption is the favored method by which the regulatory agency rescues the failed bank. *See, In re Jeter,* 48 B.R. 404 (Bankr.N.D.Tex.1985). In such a transaction, the agency obtains a purchaser for the assets of

the failed bank and reopens the bank as quickly as possible with little interruption of its operation and no loss to depositors. When the agency acts as receiver of the failed bank, it merely

§ 1823(e). This section has the same effect as the *D'Oench Duhme* doctrine in that it bars any secret or side agreements which if asserted by a borrower from the failed bank, either as the basis for a claim or defense, might tend to defeat the rights of FDIC in any such asset. *In re Kanterman*, 97 B.R. 768 (Bankr.S.D.N.Y.1989).

By its own terms, 12 U.S.C. § 1823(e) does not apply to FDIC when acquiring assets of a failed institution as receiver instead of in its corporate capacity. *FDIC v. McClanahan*, 795 F.2d 512 (5th Cir. 1986), *In re Kanterman*, 97 B.R. 768 (Bankr.S.D.N.Y.1989). Using the analysis of 12 U.S.C. § 1823(e), the Fifth Circuit has extended the statutory rule precluding the use of such secret or side agreements as the basis of claims or defenses against FSLIC when it acquires an asset via a purchase and assumption transaction, but only when FSLIC is acting in its corporate capacity. *Beighley v. FDIC*, 868 F.2d 776 (5th Cir., 1989), *Templin v. Weisgram*, 867 F.2d 240 (5th Cir.1989).[4]

■ However, the common law *D'Oench Duhme* doctrine applies to FSLIC both in purchase and assumption transactions *and when FSLIC is acting in its capacity as receiver* of the failed financial institution. *FSLIC v. Lafayette Investment Properties*, 855 F.2d 196 (5th Cir.1988).[5]

■ In *D'Oench Duhme*, the borrower was precluded from asserting a defense to an FDIC action to collect a note on the basis that a secret arrangement between the failed bank and the borrower designed to deceive either the regulatory authorities or other creditors, and in which the borrower participated, would threaten the purpose of the FDIC in its rescue attempt of a

failed bank. In general, application of the *D'Oench Duhme* doctrine will bar the assertion of fraud in the inducement and failure of consideration defenses originating in acts or representations of bank officers or representatives which are not set forth in the loan documents. *FSLIC v. Murray*, 853 F.2d 1251 (5th Cir.1988), *FSLIC v. Lafayette Investment Properties*, 855 F.2d 196 (5th Cir.1988), *FDIC v. McClanahan*, 795 F.2d 512 (5th Cir.1986). Additionally, any defenses or oral agreements which arise out of any "secret side agreements" under the *D'Oench* test as set out earlier will be barred. *See, Murray* at 1255.

Any assertion of a basis for the imposition of the remedy of equitable subordination premised on wrongful conduct of the bank toward the debtor in the form of oral promises which the bank failed to keep, is also precluded. *CTS Truss v. FDIC*, 868 F.2d 146 (5th Cir.1989), *Beighley v. FDIC*, 868 F.2d 776 (5th Cir.1989). In sum, application of the *D'Oench Duhme* doctrine has the effect of preventing parties from asserting any defenses or claims against FSLIC or FDIC which do not arise out of the loan documents. *In re Valentine*, 93 B.R. 219 (Bankr.C.D.Cal.1988).

■ This doctrine is, however, subject to some limitations. First, although *D'Oench Duhme* will bar defenses or claims based upon a secret or side agreement between the borrower and the failed bank, it does not completely bar all defenses or claims of the borrower. *FDIC v. McClanahan*, 795 F.2d 512 (5th Cir.1986). Where a note or written agreement imposes bilateral obligations on the parties in addition to the obligation by the maker to pay a sum certain, the borrower may assert such claims

---

continues to act for the bank in managing or liquidating bank assets.

4. The Fifth Circuit has accomplished the result of the *D'Oench Duhme* federal common law bar under 12 U.S.C. § 1823(e) by developing a "holder in due course" status for FDIC and FSLIC in purchase and assumption transactions. *FSLIC v. Murray*, 853 F.2d 1251 (5th Cir.1988), *See also, CTS Truss v. FDIC*, 868 F.2d 146 (5th Cir.1989). Note, however, that this holder in due course doctrine was not adopted by the U.S. Supreme Court in *W.T. Langley v.*

FDIC, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).

5. It is interesting to note that other circuits have gone so far as to extend to FSLIC in its capacity as *receiver* the holder in due course status reserved in this circuit to FSLIC or FDIC when they have acquired the asset via purchase and assumption transaction or as security for a loan. *See, First South v. Aqua Construction*, 858 F.2d 441 (8th Cir.1988). FSLIC has set out no facts which would support the extension of this doctrine in this case.

or defenses against the FDIC or FSLIC. *Id.* at 515, *Howell v. Continental Credit Corp.*, 655 F.2d 743 (7th Cir.1981). Such claims or defenses arising out of the written agreement between the borrower and the failed bank will not be precluded under the *D'Oench Duhme* doctrine. Additionally, in a case where the borrower asserts a defense or counterclaim not grounded in a secret or side agreement precluded by *D'Oench Duhme*, and such borrower is innocent of wrongdoing or negligence in connection with the transaction, *D'Oench Duhme* will not apply and the FDIC or FSLIC will merely succeed to the rights which were possessed by the failed bank in connection with the transaction. *FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974).[6]

As such, I conclude that the *D'Oench Duhme* doctrine applies to the facts of this case to make partial summary judgment in favor of FSLIC appropriate as to some of the defenses and counterclaims asserted by Roy D. Hunter. In applying the above analysis, I have considered the limitations on the doctrine's scope, as set out in the case law, along with the bases out of which the counterclaims and defenses arise.

■ First, I find that all of the counterclaims and defenses which are premised on the oral statements or representations by Mainland lending officers or representatives are barred as against FSLIC. These defenses, as asserted by Hunter, include fraudulent and/or wrongful inducement arising out of certain false representations of material fact allegedly made in connection with the loan. In addition, the counterclaim asserted by Hunter for fraud is also barred as it is based on allegations of intentional misrepresentation which are not premised on the written loan documents. However, I deny summary judgment as to certain other defenses and counterclaims asserted by Hunter and conclude that as to these, there exists genuine issues of material fact which should be presented at trial.

■ The defenses of breach of contract and wrongful foreclosure, I do not find barred by the application of the *D'Oench Duhme* doctrine. These defenses are premised on an alleged breach of the terms of the predevelopment loan agreement by *FSLIC,* not the failed bank. If Hunter was not legally in default at the time of foreclosure, then that foreclosure could be wrongful. These defenses do not have their origins in any secret or side agreements between Hunter and Mainland which would have the effect of misleading or defrauding FSLIC; in fact these defenses are based on notes and predevelopment loan agreements, as written, and FSLIC's actions which were premised on them. The loan agreement was not extraordinary and there was no culpability or negligence on the part of Hunter. The defenses arise out of the terms of the bilateral agreement which Hunter alleges created an obligation on the part of the bank and/or FSLIC to fund certain monies to Hunter, including interest charges upon his application. Whether or not these defenses are valid under state contract law remains to be tested at trial. I conclude that Hunter should not be barred from the use of these defenses by application of the *D'Oench Duhme* doctrine.

■ The same reasoning applies to the counterclaims asserted by Hunter for wrongful repossession of collateral, breach of contract and setoff. Actions taken by FSLIC itself are not covered by the *D'oench Duhme* doctrine. FSLIC cannot be protected from its own actions. Therefore, I conclude that these counterclaims should not be barred under the *D'Oench Duhme* doctrine and likewise should stand the test of trial.

## IV. OTHER REASONS SUPPORTING PARTIAL SUMMARY JUDGMENT.

For the reasons stated above, I conclude that there exists substantial questions of

---

**6.** In the *Meo* case, the borrower executed a promissory note to acquire stock in the bank which later became insolvent. The bank failed to properly execute the order by giving the borrowers voting trust certificates instead of common stock. The borrower, *Meo,* was unaware of the way in which his order was executed.

The Ninth Circuit held that *Meo,* as a bona fide borrower who was not a party to any deceptive scheme nor negligent with respect to the circumstances giving rise to his claimed defense, was not estopped from asserting such a defense against the receiver of the bank.

fact which support my denial of complete summary judgment under *D'Oench Duhme* in favor of FSLIC. As this is true, I find that FSLIC has failed to meet its burden of proof on the motion for summary judgment under F.R.C.P. 56 and B.R. 7056 as to the issues on which summary judgment was denied.

Although FSLIC also argues that summary judgment is proper in cases involving interpretation of a writing when the writing is found unambiguous, I do not find merit to this argument. At this time, there exists no issue or question properly before me regarding the interpretation of the pre-development loan agreements upon which summary judgment may be based.[7] Summary judgment will not be rendered in favor of FSLIC on this basis.

■ FSLIC also argues as a basis for summary judgment that Hunter's claims and defenses asserted in this action are barred by the application of res judicata via the FHLBB decision and order. I find that res judicata does not apply under the standard applicable in this circuit.[8] The FHLBB is not a court of competent jurisdiction as required prior to an application of res judicata. *Coit Independence Joint Venture v. FSLIC*, — U.S. —, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989). Therefore, summary judgment on this basis is not warranted.

■ Finally, FSLIC asserts that summary judgment is proper because Hunter's affirmative defenses must fail as a matter of law. I have already concluded in my application of the *D'Oench Duhme* doctrine that fact questions exist as to Hunter's defenses of breach of contract, wrongful foreclosure and other related defenses and claims. Any such legal questions which remain for trial are inextricably tied

to the factual questions which this order has left for determination at trial. I will not grant summary judgment in favor of FSLIC on this basis.

In sum, partial summary judgment is granted in favor of FSLIC to the extent set out previously in this order.

The defenses by Roy D. Hunter alleging fraud in the inducement or wrongful inducement and all claims by Hunter for fraud, which arise out of a secret, side agreement between Mainland representatives and Hunter are barred. All other defenses and counterclaims premised upon the terms of the actual loan agreements and the actions of FSLIC itself will stand for purposes of trial.

Pursuant to Hunter's supplemental motion to reinstate which urges that I delay ruling on the summary judgment until Hunter has completed discovery, (Docket Entry No. 24), I find that my granting of this partial summary judgment renders Hunter's request moot.

---

7. These issues may subsequently be raised as a result of this order or for trial purposes but I do not find that they are before me at this time such that summary judgment would be warranted.

8. The requirements for proper application of res judicata are fulfilled when: (1) the parties are

identical in both proceedings, (2) the prior decision is rendered by a court of competent jurisdiction, (3) the prior decision is final and (4) both proceedings involve the same cause of action. *Southmark Properties v. Charles House Corp.,* 742 F.2d 862 (5th Cir.1984).