**FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver of Citizens State Bank of Fulda, Respondent,**

v.

**Duane K. SATHER, Appellant.**

No. C9–90–2010.

Court of Appeals of Minnesota.

April 23, 1991.

Review Granted June 19, 1991.

Brian E. Palmer, Thomas O. Kelly, III, Dorsey & Whitney, Minneapolis, for respondent.

Charles Quaintance Jr., Virginia A. Bell, Richard A. Kempf, Maslon, Edelman, Borman & Brand, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and HUSPENI and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

The FDIC contends, and the trial court held, that Duane Sather is estopped from claiming the defenses of failure of consideration and fraud against three notes fraudulently drawn by a bank officer against Sather's line of credit. The trial court applied the *D'Oench, Duhme* doctrine, finding Sather executed a secret agreement with the bank which lent himself to a scheme likely to mislead banking authorities. We reverse.

## FACTS

On January 7, 1983, appellant Duane K. Sather signed a $350,000 note for farm financing with Citizens State Bank of Fulda. The note shows Sather agreed to an interest rate of 13 percent, paid semiannually, principal payable on demand. Sather, however, did not draw the full $350,000. Sather contends the note in fact authorized a line of credit for $350,000, and was treated at all times as such by both parties.

Sather occasionally drew on this "line of credit" and eventually signed two renewal notes for $62,828.49 each. This indebted-

ness has been satisfied. In the meantime, Robert E. Howe, the executive vice president of the bank, executed three "dummy notes" of $35,000, $90,000, and $44,500 against Sather's $350,000 "master note." Sather did not sign these dummy notes, nor did he receive any of the proceeds. Instead, the funds were transferred into an account with the Citizens State Credit Company, another institution controlled by Howe. Eventually the money found its way into Howe's personal account with a Chicago commodities market broker, where it was promptly dissipated.

In June of 1984, Sather received a request for audit confirmation reflecting a total indebtedness to the bank of $431,156. Sather testified he contacted Howe, who explained the confirmation amount reflected not only his indebtedness, but $350,000 of unused credit as well. Apparently satisfied with this explanation and follow-up correspondence, Sather signed the audit confirmation and forwarded it to the bank's accountant.

The bank went into FDIC receivership on February 15, 1985. On June 20, 1985, the FDIC, as receiver for the bank demanded $468,484.43 from Sather reflecting outstanding amounts owed, including the three "dummy notes" executed by Howe. The FDIC sued Sather for recovery on the notes and Sather tendered the defenses of failure of consideration and fraud. At trial, the district court found Sather was estopped from tendering these defenses under *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The FDIC was granted judgment for $305,500. Sather appeals from entry of judgment.

## ISSUE

Did the trial court err in applying the doctrine of *D'Oench, Duhme* to estop Sather from asserting defenses of failure of consideration and fraud?

## ANALYSIS

■ The *D'Oench, Duhme* doctrine provides that a borrower may not assert a secret agreement as protection from the FDIC when the borrower "lent himself to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled." *D'Oench, Duhme*, 315 U.S. at 460, 62 S.Ct. at 681. This rule is applied whether the FDIC functions as receiver of a failed bank or in its corporate capacity. *See Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989).

In cases such as this, where the findings of fact are not specifically at issue, the question simply becomes whether the *D'Oench, Duhme* doctrine was properly applied. *FDIC v. McClanahan*, 795 F.2d 512, 514–15 (5th Cir.1986). This is a question of law and so subject to de novo review on appeal. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Util. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

The *D'Oench, Duhme* doctrine "has evolved to a rule that today is expansive and perhaps startling in its severity." *Bowen v. FDIC*, 915 F.2d 1013, 1015 (5th Cir.1990). Liability is imposed regardless of whether the borrower acted in good faith. *Bell & Murphy & Assocs. v. Interfirst Bank Gateway*, 894 F.2d 750, 753–54 (5th Cir.1990). Even in the absence of malfeasance, if a borrower's actions lend themselves to an unrecorded arrangement which misleads the FDIC, liability will not be spared. *Bowen*, 915 F.2d at 1016.

■ However, our review of the case law shows the FDIC's reliance on the facial validity of loan documents in the bank's books is a prerequisite to application of the *D'Oench, Duhme* doctrine. It is upon the absence of any such reliance in this case that we reverse the district court.

The district court found that the facial language of the master note referring to farm financing and the fact that Sather did not receive the $350,000 upon execution of the note, implied a "side or secret agreement." However, the record shows the FDIC consistently treated the $350,000 note as a line of credit. Correspondence from the FDIC's bank liquidation specialist refers to "all activity *on the line of credit* from Mr. Sather." At trial, the FDIC's

expert admitted, under cross-examination, that the note established a line of credit. Finally, the FDIC has never made a demand directly on the $350,000 master note. Rather, it treats that note as a governing note and details its claims on the three dummy notes executed consistently with a line of credit arrangement.

The district court found Sather lent himself to a transaction likely to mislead the FDIC based on the audit confirmation. However, that document was forwarded to the bank's accountants. There is no indication in the record before us that this confirmation was a part of the "books" upon which the FDIC made its initial demand for payment.

In arriving at our decision, we keep foremost in mind the purposes of the *D'Oench, Duhme* doctrine. "Fundamentally, *D'Oench* attempts to ensure that FDIC examiners can accurately assess the condition of a bank *based on its books*." *Bowen,* 915 F.2d at 1016 (emphasis added). The confirmation was not a part of the bank's books at the time the FDIC made its demand against Sather. The only assets on the bank's books were the notes Sather admits to having signed and the fraudulent notes. The FDIC's ability to assess and rely on the bank's books was not affected by the audit confirmation. To the contrary, the policies underlying the doctrine are furthered when the FDIC abides by the same rules imposed upon the borrower and does not search for extrinsic evidence as to the nature of loan agreements.

The trial court improperly applied the *D'Oench, Duhme* doctrine in this case. There was no "side or secret agreement," but rather a transaction which was understood by Sather, the bank and the FDIC as a line of credit. There is no evidence that Sather lent himself, either negligently or intentionally, to Howe's scheme to defraud or that the FDIC relied on such actions. Since there is no dispute as to Sather's defense of failure of consideration, we reverse the trial court and order judgment entered in favor of appellant Sather.

Sather also contends, on appeal, that the trial court erred by not granting a new trial to consider evidence that the FDIC seeks duplicative damages due to the participation of other financial institutions in the contested notes. In light of the dispositive nature of the prior issues, we decline to address this issue.

## DECISION

Reversed.