United States Court of Appeals,

Fifth Circuit.

No. 93-3327

Summary Calendar.

FEDERAL DEPOSIT INSURANCE CORPORATION, in its Capacity as Receiver and Liquidator of Pontchartrain State Bank and Baton Rouge Bank & Trust Company, Plaintiffs-Appellees,

v.

Noel GILBERT, et al., Defendants,

Noel Gilbert, Defendant-Appellant.

Dec. 16, 1993.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REAVLEY, DAVIS and DeMOSS, Circuit Judges.

REAVLEY, Circuit Judge:

In this suit on a promissory note, Noel Gilbert appeals a summary judgment entered against him and in favor of Baton Rouge Bank and Trust Company (BRBT), the current holder of the note. We agree with the district court that Gilbert, one of four makers on the note, is liable on the note based on well-established federal law governing suits on notes where the FDIC has become the holder. We also conclude that the district court correctly applied Louisiana law governing the effect of settlements reached with other makers on the note and the insolvency of another maker. Accordingly we affirm.

BACKGROUND

Gilbert, Robert Westerlund, William Rolston and Ford Dieth executed a promissory note in favor of Commercial Bank and Trust Company (CBT). The note is dated May 8, 1986 and is in the amount of $56,919.07. The bottom of the last page of the note contains a guaranty provision, separately signed by the four makers. The note's original repayment provision is crossed out and replaced with a typed provision providing for monthly payments of $1200 beginning on June 8, 1986. This provision was initialled by Gilbert only, on June 6, 1986.

CBT brought a state court action against the makers in December of 1986, alleging that the note was in default. In October of 1988, CBT was declared insolvent, and the FDIC was appointed as receiver. Simultaneously with the closing of CBT, the FDIC entered into a purchase and assumption agreement with Pontchartrain State Bank (PSB), whereby PSB purchased certain assets of CBT, including the note in issue. PSB was substituted as plaintiff in the state court proceeding.

In 1987 Westerlund was discharged in bankruptcy from liability on the note. In April of 1991 Rolston settled PSB's claim against him for $12,000 and was dismissed from the suit. In May of 1991 Dieth settled with PSB for $6500 and was also dismissed from the suit. In July of 1991 PSB also failed, and in August of 1991 the FDIC removed the case to federal court. In June of 1992, the FDIC entered into a loan sale agreement with BRBT, whereby several assets held by the FDIC, including the note in issue, were sold to BRBT. BRBT was substituted as plaintiff. BRBT reurged a pending motion for summary judgment against Gilbert, which the court granted.

## DISCUSSION

Gilbert's defense to the note is based on the alteration described above. Two affidavits appear in the record regarding this defense. Gilbert filed his own affidavit stating that "the note sued upon has been altered on its face, subsequent to its execution by all parties thereto, which is clearly apparent." Robert Westerlund, another maker on the note, signed an affidavit likewise stating that CBT altered the note after its execution, and that "upon re-presentment of the subject altered document, I and the other parties refused to re-execute the document and refused the offered contract by [CBT]." Gilbert cites the 1975 version of LA.REV.STAT.ANN. § 10:3-407,[1] which provided that "[a]s against any person other than a subsequent holder in due course ... alteration by the holder [of an instrument] which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense...." We can certainly question whether the meager summary judgment evidence proffered by Gilbert raised a genuine fact issue under this statutory defense. The affidavits do not appear to raise a genuine fact issue of fraud

---

[1]This statute is Louisiana's version of § 3-407 of the Uniform Commercial Code. The statute was amended effective January 1, 1994.

by CBT, nor do they appear to raise a fact issue on whether the subsequent holders of the note were holders in due course. Gilbert argues on appeal that the subsequent purchasers of the note "must have had full knowledge of the litigation and defenses and claims raised therein, sufficient to deny them holder in due course status." This assertion, however, is not factually supported in the record by competent summary judgment evidence. Moreover, Gilbert admits that he initialled the change to the note, and the statute plainly does not apply to one who assents to the alteration.

Regardless, this defense is barred by the federal *D'Oench, Duhme* and holder in due course doctrines. These doctrines bar the assertion of personal defenses to a note in cases where the FDIC has become the holder of the note.[2] A review of our prior cases establishes that alteration of a document after execution, standing alone, does not preclude the broad sweep of these doctrines.[3] Indeed, handwritten or typewritten changes to a printed document, initialled by the party or parties agreeing to the changes, is an extremely common practice in commercial and banking transactions. To initial such a change and then claim it as a defense to the note is a classic example of circumstances that the *D'Oench Duhme* doctrine was created to address, namely a "scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled." *D'Oench Duhme & Co. v. FDIC,* 315 U.S. 447, 460, 62 S.Ct. 676, 681,

---

[2]In the court below Gilbert challenged the applicability of the *D'Oench Duhme* doctrine to cases where the FDIC is acting in its capacity as a receiver as opposed to acting in its corporate capacity. We have held that the doctrine applies when the FDIC sues as a receiver. *FDIC v. McClanahan,* 795 F.2d 512, 514 n. 1 (5th Cir.1986); *Beighley v. FDIC,* 868 F.2d 776, 784 (5th Cir.1989). In addition, the district court correctly noted that where, as here, the FDIC is appointed receiver and enters into a purchase and assumption agreement, it acts in both its receiver and corporate capacities. *Id.* at 779 n. 7. The district court also correctly noted that the *D'Oench Duhme* and federal holder in due course doctrines apply to subsequent purchasers and assignees of notes from the FDIC. *Porras v. Petroplex Sav. Ass'n,* 903 F.2d 379, 381 (5th Cir.1990).

[3]*See FDIC v. Plato,* 981 F.2d 852, 855-58 (5th Cir.1993) (finding *D'Oench Duhme* doctrine applicable where borrowers submitted promissory note in blank, and lender later completed note and altered related documents); *FSLIC v. Murray,* 853 F.2d 1251, 1254-57 (5th Cir.1988) (finding federal holder in due course doctrine applicable where note altered after signature); *McClanahan,* 795 F.2d at 516 (5th Cir.1986) (applying *D'Oench Duhme* doctrine where defendant signed blank promissory note later filled out to reflect $62,500 loan).

86 L.Ed. 956 (1942).[4] Nor does the mere pendency of litigation regarding the note preclude application of these doctrines.[5] Gilbert is therefore liable on the note.

Gilbert also claims that the district court incorrectly applied Louisiana law in evaluating the effect of the settlements with comakers Rolston and Dieth and the discharge in bankruptcy of the obligation of comaker Westerlund. The district court concluded that Gilbert was entitled to a set-off in the amount received from the settlements. Gilbert claims that he is obligated for only one-third of the sums owed on the note.

Whatever the result would be under Louisiana law without the guaranty, we conclude that Gilbert is not entitled to a pro rata reduction in his obligation under the note based on the settlements or insolvency of the other makers. In *First Nat'l Bank of Crowley v. Green Garden Processing Co.,* 387 So.2d 1070 (La.1980), the Louisiana Supreme Court addressed factual circumstances similar to those in the pending case. There, a bank was the holder of a promissory note from a corporation. The note was secured by three guaranties, each in the amount of $86,350 and signed by three individuals. One of the guarantors received a discharge in bankruptcy and a second settled with the bank prior to trial. The court held that, based on the wording of the guaranty, the non-settling

---

[4]There is no evidence in the record that Gilbert, upon coming to the conclusion that the alteration of the note rendered it unenforceable, made any attempt to recover the note or otherwise change the records of the lender to reflect that the note was void. *Compare McClanahan,* 795 F.2d at 516 ("McClanahan signed and delivered a blank promissory note to a man he knew had been convicted of bank fraud. When the loan for which that note had been given was refused, McClanahan failed to take any steps to recover the executed note, even though his usual practice was to request the return of promissory notes after he paid off the loan for which they had been given.").

[5]*Randolph v. Resolution Trust Corp.,* 995 F.2d 611, 615 (5th Cir.1993) ("Plaintiffs argue that because they had filed suit prior to the failure of First South, the FDIC had knowledge of the fraud because the pleadings in the Plaintiffs' suit were among the "records of the bank' when the FDIC took over. We reject this argument. Past precedent indicates that the term "records of the bank' refers to the note itself or related loan documents. We hold that pleadings of a lawsuit do not constitute "records of the bank' for the purpose of applying *D'Oench Duhme.*") (citations omitted); *FDIC v. Binion,* 953 F.2d 1013, 1016-17 (6th Cir.1991) ("[D]efendant argues that the district court erred in finding that the holder in due course doctrine was applicable to the FDIC where the counterclaim raising the defense of material and fraudulent alteration had been pled four years before the FDIC became the holder of the note.... There is a presumption that the FDIC had no knowledge of any defenses.... Summary judgment is proper for the FDIC where, as here, insufficient specific facts have been produced showing there is a genuine issue of material fact regarding the FDIC's knowledge.") (citations omitted).

guarantor was liable for the corporation's indebtedness up to the dollar limit set in the guaranty, and that the bank's release of the settling guarantor did not affect the non-settling guarantor's liability. The court explained:

> [W]here the contract is silent, we may look to the provisions of the civil code governing the contract of suretyship to resolve differences between the parties. Where, however, the contract is not silent, the parties are bound by its contents, as agreements legally entered into have the effect of laws on those who have formed them.... In sum, we hold that the release of [the settling guarantor] by the Bank did not discharge [the non-settling guarantor's] liability for the payment in full of [the corporation's] indebtedness to the Bank up to the amount of $86,350.00 plus interest and attorney fees.

*Id.* at 1073-74. The court based this holding on language found in the guaranty. The majority noted that the guaranty provided that the bank may "release or discharge indorsers, guarantors or other parties, grant releases and discharges generally, make changes of any sort whatever in the terms of the contract or manner of doing business with the debtor and with other parties and securities in relation thereto without notice to the undersigned, such notice being hereby specifically waived." *Id.* at 1073 (emphasis omitted). A concurring opinion also noted language in the guaranty providing that the guarantor agrees to "obligate myself ... in solido with the debtor, for payment of the said indebtedness precisely as if the same had been contracted and was due or owing by me in person ... hereby waiving ... all pleas of discussion and division and I agree upon demand at any time, to pay to said Bank ... the full amount of said indebtedness up to the amount of this guaranty...." *Id.* at 1074-75.

This court followed *Green Garden* in *GATX Aircraft Corp. v. M/V Courtney Leigh,* 768 F.2d 711 (5th Cir.1985), where we held that a guarantor was not entitled to an offset equal to the virile shares of settling and bankrupt guarantors. *Id.* at 717-18. We found that language in the pertinent guaranty agreement and *Green Garden* compelled this result. In *GATX,* the guaranty agreement in issue stated that the plaintiff retains the "right and privilege ... to release at any time or times any one or more of the Guarantors from his or her obligations hereunder without in any way discharging or releasing any other Guarantor or Guarantors hereunder." *Id.* at 718.

While the agreement in issue in the pending case is not identical to the agreements analyzed in *Green Garden* and *GATX,* we find it sufficiently similar to convince us to follow these two

precedents. Here, the note and guaranty consist of a single document. The guaranty at the end of the document is separately signed by the four makers of the note and provides that "I (We) jointly, severally and in solido unconditionally guarantee payment of the above Note to Bank and agree to all of the Note's terms and conditions." The note also provides:

> I (as well as all other persons signing this Note as co-borrowers or guarantors) waive demand for payment, protest and notice of protest and non-payment, and all pleas of division and discussion, and agree that our liability under this Note shall be "joint, several and in solido" with each other. We further agree that discharge or release of any party or collateral securing this Note, extension of time for payment, or delay in enforcing any rights granted to you, will not cause you to lose any rights under this Note.

We interpret the language of the agreement to provide that each of the four maker/guarantors is liable on the note for its full amount, and that the lender could settle with one maker without losing its right to pursue another maker for the remaining balance on the note.

AFFIRMED.