FEDERAL DEPOSIT INSURANCE COR-
PORATION, etc., Plaintiff and
Appellee,

v.

Santino D. MEO, Defendant
and Appellant.

No. 73–2100.

United States Court of Appeals,
Ninth Circuit.

Oct. 21, 1974.

Sidney F. DeGoff (argued), of Field, DeGoff, Huppert & MacGowan, San Francisco, Cal., for defendant-appellant.

Charles A. Legge (argued), of Bronson, Bronson & McKinnon, San Francisco, Cal., for plaintiff-appellee.

## OPINION

Before MERRILL, KILKENNY and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Meo appeals from a judgment of the district court holding him liable on a promissory note he, as maker, gave to a now-closed national bank. We reverse.

*Statement of Facts*

In December, 1962 Meo and three associates executed a promissory note to San Francisco National Bank ("SFNB") to enable them to acquire 1000 shares of SFNB's common stock. Instead of properly executing the order SFNB directed its brokers to issue and transmit 1000 voting trust certificates in the name of the purchasers. Appellant and his associates never saw the trust certificates, which were held by SFNB as security for the loan, and were not aware of the manner in which their order had been executed.

In 1963, appellant and the co-makers became apprehensive over the affairs of the bank and sought to sell their stock and discharge their debt. While the other three signers of the note did liquidate their positions, appellant did not do so. Still unaware of the mis-execution of his order, he instead signed a new note

(the subject of this litigation) for his share of the balance due, $15,776.87.

Appellant's note remained an asset of the bank until January 22, 1965, when SFNB was closed due to insolvency. At that time, the Federal Deposit Insurance Corp. ("FDIC") was appointed receiver and assumed control of its assets, including appellant's note. When appellant refused to pay the note, FDIC filed this action. Not until after the litigation had begun did appellant learn that his order for common stock had not been executed and that instead voting trust certificates had been acquired and were held by the bank.

The district court, sitting without a jury, entered judgment on the note for the receiver.

*Equitable Estoppel*

The district court based its decision solely on its determination that public policy favors bank depositors over bank borrowers. Noting that FDIC, the representative of depositors, is a "public official charged with a special responsibility to round up assets for the benefit of depositors who presumable [sic] were led in part to make their deposit by express or implied reliance upon the assets of the bank," the court concluded that the "status of the depositor is superior to the status of the borrower." (Tr. 253) Thus, according to the court, regardless of the borrower's innocence, he may not after the bank's collapse avoid the note.

The question raised by this appeal is whether a purchaser of bank stock, unaware that the stock order has been improperly executed, is estopped from avoiding his note to the bank for failure of consideration after the bank has collapsed and gone into receivership.

Arguing that the estoppel doctrine should apply in this case, FDIC relies exclusively on D'Oench, Duhme & Co., Inc. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its progeny. D'Oench, however, is inapposite. It involved a note, regular on its face, executed by the defendant, an accommodation maker. The note was given to the

bank to conceal certain irregularities from the bank examiners, and at the time the note was executed the bank agreed that the note would not be collected and that all interest payments made would be repaid. After the bank closed, FDIC acquired its assets and sued to collect on the note. At trial, the maker contended that the note was given without consideration, and that the secret agreement by the bank was enforceable against FDIC. Noting that federal policy protects FDIC and the public funds which it administers against misrepresentations as to bank assets,[1] the Supreme Court held that the accommodation maker was estopped from asserting either of these defenses. *Id.* at 461, 62 S.Ct. 676.

Appellee argues that *D'Oench* stands for the broad proposition that FDIC and the depositors it represents are protected from losses due to reliance upon the notes of insured banks which are later subject to the claim of some undisclosed defenses. And, according to appellee, this broad policy applies against *all* makers who are responsible for the creation and continued existence of a note. (Appellee's Brief at 7) We disagree.

*D'Oench* was decided on the very narrow ground that an accommodation maker who executes a *secret agreement* may not take "advantage of an undisclosed and fraudulent arrangement which [public policy] condemns and which the maker of the note *made possible." Id.* at 461, 62 S.Ct. at 681 (emphasis supplied). Although this estoppel doctrine may apply even though the maker did not intend to deceive creditors or depositors, there at least must be a showing that "the maker lent himself to a scheme or arrangement whereby the banking authority . . . was or was likely to be misled." *Id.* at 460, 62 S.Ct. at 681.

A mere recitation of the facts in this case demonstrates the inapplicability here of *D'Oench* and its equitable estoppel rationale. Appellant was a bona fide purchaser-borrower; he did not enter into any scheme or secret agreement whereby the assets of the bank would be overstated; he was wholly innocent of the wrongful action of SFNB in issuing voting trust certificates instead of common stock shares; he was not negligent in failing to discover the manner in which the stock order was actually executed; and, most importantly, appellant had no knowledge whatsoever of the failure of consideration until after the bank was closed and appellee instituted this suit.

On these facts, the district court found that appellant was a completely innocent party with respect to the bank's improper execution of the stock sale agreement. We agree.[2] Thus, appellant

1. *See* Federal Reserve Act, 12 U.S.C. § 264 et seq.

2. Appellee disputes the district court's finding that appellant was an "innocent" party. Appellee finds wrongful conduct in appellant's failure to avoid the note after he learned that the bank loan was illegal. In late 1964, Meo was informed that the loan may have been illegal because a bank may not loan money on its own bank stock. 12 U.S.C. § 83. He then questioned SFNB's president about the legality of the transaction, and the president, who had encouraged the loan and stock purchase in the first place, assured Meo everything done was proper. Although the bank president said he could not issue a collateral receipt for the stock held, Meo took no action to obtain his collateral or avoid the note.

Failure at an early date to avoid the note on grounds of the loan's illegality, appellee argues, estops Meo from raising the defense of failure of consideration. This contention is without merit. In the first place, it is open to question whether Meo in fact could have avoided the note. The defense of illegality was not available to him because only a governmental agency has standing to challenge a bank loan made in violation of 12 U.S.C. § 83. Dorsey v. RFC, 197 F.2d 468, 470 (7th Cir. 1952); cf. First Nat'l. Bank of Xenia v. Stewart, 107 U.S. 676, 2 S.Ct. 778, 27 L.Ed. 592 (1883). Furthermore, the district court found, as a matter of fact, that Meo would have had difficulty in persuading the bank to rescind the transaction.

In any event, appellee's estoppel argument is fatally flawed because the defense based on the loan's illegality is totally unrelated to the defense asserted in this case—failure of consideration. Appellant's failure to assert one defense, even if that failure amounts to negligence, does not preclude him from as-

appears in a totally different light from the note maker in *D'Oench* or any of the other estoppel cases cited by appellee.[3]

■ This case is much closer to Camerer v. California Savings & Commercial Bank, 4 Cal.2d 159, 48 P.2d 39 (1935), than to *D'Oench*.[4] In the California case, Camerer deposited certain bonds in a safe deposit box, access to which he gave the bank president, Irwin. Irwin used these bonds from time to time to inflate the assets of the bank, and the banking authorities were thereby misled. Although Irwin paid Camerer for use of the bonds, Camerer was unaware of the purpose for which Irwin used them. Noting that the trial court's findings exonerated Camerer from connivance and collusion in fraud and from negligence, the California Supreme Court held that he was not estopped from recovering his bonds from the bank's receiver. 4 Cal.2d at 170–172, 48 P.2d at 44–45.

■ Similarly in this case, Meo is innocent of any wrongdoing or negli-

gence. The special facts present in *D'Oench*, 315 U.S. at 474, 62 S.Ct. at 687 the equitable estoppel doctrine should not apply. As Justice Jackson stated, concurring in *D'Oench*, "where *ordinary* and *good-faith* transactions are involved," the FDIC succeeds "only to the rights which the bank itself acquired." *D'Oench*, 315 U.S. at 474, 62 S.Ct. at 687 (Jackson, J., concurring) (emphasis supplied). *See also* Deitrick v. Standard Surety Co., 303 U.S. 471, 479, 58 S.Ct. 696, 82 L.Ed. 962 (1938); *Camerer*, 4 Cal.2d at 170, 48 P.2d at 44.

A bona fide borrower, like Meo, is not an insurer of financial representations of the bank with whom he conducts business. We conclude that a bank borrower who was neither a party to any deceptive scheme involving, nor negligent with respect to, circumstances giving rise to the claimed defense to his note is not estopped from asserting such defense against the bank's receiver.[5]

Reversed and remanded for determination of reasonable attorneys' fees to be awarded Meo against FDIC.

serting a wholly different defense to the note. Cf. C. E. Carnes & Co. v. Employers' Liability Assur. Corp., 101 F.2d 739, 742 (5th Cir. 1939).

3. Each of the cases cited by appellee to support his estoppel argument involved accommodation or surety notes and secret agreements that the notes would never be collected. See FDIC v. Alker, 151 F.2d 907 (3d Cir. 1945), cert. denied, 327 U.S. 799, 66 S.Ct. 901, 90 L.Ed. 1025 (1946); Wood v. Kennedy, 117 Cal.App. 53, 3 P.2d 366 (1931); FDIC v. Wainer, 4 Ill.App.2d 233, 124 N.E.2d 29 (1955); FDIC v. Motorlease, Inc., 56 Misc.2d 306, 288 N.Y.S.2d 356 (Sup. Ct.1967).

4. Although federal law controls in cases involving the rights of the FDIC [*D'Oench*, 315 U.S. at 457, 62 S.Ct. 676], the precise issue raised here has not been decided by any federal court. In determining federal common law, "federal courts are free to apply the traditional common-law technique of decision and to draw upon all the sources of the common law in cases such as the present." *D'Oench*, 315 U.S. at 472, 62 S.Ct. at 686 (Jackson, J., concurring). Consideration of California law is particularly appropriate here because "many questions as to the liability of parties to commercial paper which comes into the hands of the [FDIC] will best be solved by applying the

local law with reference to which the makers and the insured bank presumably contracted." *Id.* at 474, 62 S.Ct. at 687 (Jackson, J., concurring).

5. Appellee's argument that there was no failure of consideration because there is no material difference between common stock and voting trust certificates is without merit. At the time appellant purchased the bank stock, he knew that the common stock which he ordered carried voting rights and that voting trust certificates carried no such rights. It is irrelevant that appellant never attempted to vote; there was failure of consideration simply because appellant did not receive that for which he specifically bargained. *See, e. g.*, Lonergan v. Buford, 148 U.S. 581, 589, 13 S.Ct. 684, 37 L.Ed. 569 (1893); J. R. Simplot Co. v. L. Yukon & Son Produce Co., 227 F.2d 67, 71–72 (8th Cir. 1955); Gray v. Ellis, 164 Cal. 481, 129 P. 791 (1913). *See generally* R. Nordstrom, Law of Sales § 102 (1970); Uniform Commercial Code §§ 2–301, 2–601. And even if the substantial performance rule applied in this case, Meo may avoid his note on the ground that SFNB's mis-execution of the sales-loan contract, which deprived Meo of an important part of the bargained for performance, constituted a material breach. *See generally* S. Williston, Law of Contracts § 841 (3d ed. 1962).