FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellee, *v.* GEORGE MARIS *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 82—3111

Opinion filed February 7, 1984.

Sapoznick, Sheridan & Freidin, of Chicago (John C. Vojta, of counsel), for appellants.

Frederic J. Artwick and Richard J. O'Brien, both of Sidley & Austin, of Chicago, and Thomas Brooks and Ralph Frable, both of Federal Deposit Insurance Corporation, of Washington, D.C., for appellee.

JUSTICE PERLIN delivered the opinion of the court:

On June 9, 1980, the Des Plaines Bank (Bank) brought suit in the circuit court of Cook County to recover from George and Glenda Maris (husband and wife) (defendants) and Louis Kucharis[1] loans made to Stacy Industries, Inc. (Stacy), and represented by three promissory notes alleged to have been personally guaranteed by defendants. On May 21, 1981, the Federal Deposit Insurance Corporation (FDIC), in its capacity as receiver of the Bank (Ill. Rev. Stat. 1979, ch. 16½, par. 158), was granted leave of court to be substituted as plaintiff.

Defendants appeal from the trial court's December 7, 1982, order in which the court (1) refused to vacate or modify its March 4, 1982, order dismissing defendants' affirmative defenses and (2) granted FDIC's motion for summary judgment in the amount of $88,958.78 plus costs.

The issue raised by this appeal is whether the trial court erred in striking defendants' affirmative defenses and in entering summary judgment in favor of FDIC.

For the reasons hereinafter set forth we reverse the judgment of the trial court and remand this case for trial.

The Marises, at all times relevant to this action, owned 50% of the stock of "a small manufacturing and design firm," Stacy Industries, Inc. George Maris was president of Stacy. On December 5, 1978, the Bank loaned to Stacy $15,000. Defendants executed a note (not the subject of this action) to secure that loan, which was timely repaid. At the same time, defendants each signed separate but identical

---

[1]Louis Kucharis is not party to this appeal.

guaranty instruments which in pertinent part provided as follows:

### "CONTINUING GUARANTY

For and in consideration of the sum of One Dollar ($1.00) to the *undersigned* in hand paid by the Des Plaines Bank hereinafter referred to as the 'Bank,' receipt of which is hereby acknowledged, the undersigned, and each of them, hereinafter referred to as the 'Guarantors' *do hereby jointly and severally guarantee* to the said Bank that Stacy Industries hereinafter referred to as the 'Debtor,' shall promptly and fully *pay any and all indebtedness* which now exists *and/or which may hereafter accrue in any manner from said Debtor* to the Bank up to the limit of _____ Dollars ($_____) and in the event that the said Debtor fails at any time or times to pay promptly *any and all indebtedness* which now exists *and/or may hereafter accrue from said Debtor* to the Bank as same becomes due, the undersigned and each of them hereby jointly and severally promise to pay *any and all such indebtedness* as the same becomes due from said Debtor to the Bank, forthwith, upon demand, with all expenses incurred in enforcing payment under this instrument.

This is a *continuing Guaranty* and by this instrument the Guarantors guarantee the prompt payment of *any and all indebtedness* which may now exist *and/or may hereafter accrue at any time or times* from said Debtor to the limit of this Guaranty." (Emphasis added.)[2]

These guaranty instruments also provide that defendants agree to pay "all expenses incurred in enforcing payment under this instrument *** including costs and reasonable attorney's fees."

In October and December of 1979 the Bank made three additional loans to Stacy. Three individual notes reflecting these loans were executed and delivered to the Bank by George Maris as president of Stacy. The execution dates, amounts, interest rates and maturity dates of each of the notes were as follows:

| Date | Principal Amount | Interest Rate | Due Date |
|---|---|---|---|
| 10/29/79 | $27,724.78 | 18.50% | 1/28/80 |
| 10/29/79 | 7,000.00 | 18.50% | 1/28/80 |
| 12/8/79 | 18,256.00 | 19.00% | 3/7/80 |

It is undisputed that none of these notes was in fact repaid by Stacy upon maturity. Stacy's corporate obligation on these notes was

---

[2]At no time was the guaranty limit established or the blank spaces of the guaranty form providing therefor completed.

apparently discharged in bankruptcy.[3] On June 9, 1980, the Bank initiated this action to recover the amount of the three notes based on defendants' personal guarantees.

Defendants in their answer of November 6, 1980, admitted that the subject loans were made and that the notes and guaranty instruments were executed. Defendants admitted also that the loan proceeds were distributed to Stacy and were not repaid by Stacy. Defendants, however, raised as an affirmative defense to the Bank's attempt to recover on the notes the contention that they were the victims of an alleged fraud perpetrated by "a bank officer." Defendants assert that on December 5, 1978, they executed the guaranty instruments only upon the "affirmative assurances" of a "bank officer" that the guarantees applied *only* to the December 5, 1978, note, which had in fact been repaid.

On November 20, 1980, the Bank moved to strike defendants' affirmative defense asserting that it was an attempt, through an impermissible use of parol evidence, to modify the written guarantees. On January 19, 1981, defendants were allowed by the trial court to amend their answer to include as an additional affirmative defense the fact that the guarantees, because they were "executed in blank," were invalid.

On March 14, 1981, the Commissioner of Banks and Trust Companies of the State of Illinois declared the Bank insolvent and took possession and control of the Bank's assets. (Ill. Rev. Stat. 1979, ch. 16½, par. 153, redesignated without change as Ill. Rev. Stat. 1981, ch. 17, par. 365.) On that same date the Commissioner appointed FDIC as receiver of the Bank to proceed, in accordance with section 58 of the Illinois Banking Act, with the dissolution and winding up of the Bank. (Ill. Rev. Stat. 1979, ch. 16½, par. 158, redesignated without change as Ill. Rev. Stat. 1981, ch. 17, par. 370.)[4] On May 21,

---

[3]No date of Stacy bankruptcy proceedings or documentation of such proceedings has been provided in this record.

[4]The Illinois Banking Act (Ill. Rev. Stat. 1979, ch. 16½, par. 101 *et seq.*, redesignated without change as Ill. Rev. Stat. 1981, ch. 17, par. 301 *et seq.*) authorizes the Commissioner of Banks and Trust Companies, under designated circumstances (*i.e.*, if the bank's capital is impaired) to begin proceedings in the circuit court of the county in which the bank is located to take whatever steps are necessary "to remedy the situation." Ill. Rev. Stat. 1981, ch. 17, par. 365.

The documentation of proceedings initiated by the Commissioner against the Des Plaines Bank, resulting in the appointment of the FDIC as receiver in this instance, has not been made a part of this record. It is, however, apparent that neither party disputes FDIC's authority to act as receiver.

The Federal Deposit Insurance Corporation Act (12 U.S.C. secs. 1811-1832 (1982))

1981, the FDIC's motion requesting that it be substituted for the Bank as plaintiff in this action was granted by the trial court.

On June 9, 1981, the FDIC moved to strike and dismiss defendants' affirmative defenses, asserting that in accordance with Federal common law, such defenses were "insufficient as a matter of law." Defendants responded that Federal common law does not preclude a defense based upon "actual fraud" where the party asserting that defense was the *victim* of such fraud rather than a *participant* in a "secret agreement to defraud the bank and its creditors." The FDIC, however, argued that defendants were involved in an undisclosed agreement which they were aware would allow the assets of the Bank to be overstated. Such involvement was, according to the FDIC, sufficient to preclude defendants from asserting their affirmative defenses.

On March 4, 1982, after considering the memoranda and arguments of the parties, the trial court granted FDIC's June 9, 1981, motion to strike and dismiss defendants' affirmative defenses.

On May 25, 1982, FDIC moved for summary judgment. On July 7, 1982, defendants requested that the trial court reconsider its order of March 4, 1982, striking defendants' affirmative defenses. Additional memoranda were submitted, oral argument was heard and on December 7, 1982, the trial court granted defendants' motion to reconsider. In that same order, however, the court concluded that "upon reconsideration the Court, based upon the *D'Oench* doctrine (*D'Oench, Duhme & Co. v. FDIC* (1942), 315 U.S. 447, 86 L. Ed. 956, 62 S. Ct. 676) of applicable Federal law, refuses to vacate or modify its March 4, 1982 order." The trial court granted FDIC's motion for summary judgment and entered judgment in the amount of $88,958.78 plus costs. Defendants appeal from the December 7, 1982, order.

Defendants contend that the trial court misapplied the *D'Oench* doctrine in striking their affirmative defense of fraud and that the court's December 7, 1982, order of summary judgment in favor of FDIC was error. FDIC, on the other hand, asserts that defendants' affirmative defense was properly precluded as a matter of law under the *D'Oench* doctrine and that summary judgment in its favor was appropriately entered.

It is well established that summary judgment should be entered

---

requires the FDIC to accept receivership appointments from State banking officials where, as in this case, the bank has been declared insolvent. (12 U.S.C. sec. 1821(e) (1982).) After being so appointed, the FDIC is charged with winding up the affairs of the bank, including liquidation of its assets, in an effort to protect the interests of bank depositors and creditors.

only where it is determined from a review of the pleadings and supporting documents that no genuine issue of material fact is presented and the movant is entitled to judgment as a matter of law. (*Kocjancich v. Bridges* (1981), 93 Ill. App. 3d 550, 552, 417 N.E.2d 694.) A triable issue precluding summary judgment exists where there is a dispute as to a material fact or where, the material fact being undisputed, reasonable persons might draw different inferences from the fact. (*Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 218-19, 422 N.E.2d 879.) "Summary judgment provides a means of disposing of cases with dispatch, but is a drastic method and should be allowed only when the right of the moving party is clear and free from doubt." 97 Ill. App. 3d 215, 219.

Defendants argue that there existed a disputed material issue of fact as to whether they were the "innocent victims" of fraud perpetrated by "a bank officer." Defendants urge that if they are permitted to establish that they were in fact innocent victims of fraud, the doctrine enunciated in *D'Oench, Duhme & Co. v. FDIC* (1942), 315 U.S. 447, 86 L. Ed. 956, 62 S. Ct. 676, would not, as FDIC contends, preclude their defense to FDIC's attempt to recover on the three 1979 loans made by the Bank to Stacy.

In *D'Oench* the FDIC had loaned money to a bank which it insured and from which it had received D'Oench's note as collateral. Plaintiff, D'Oench, maker of the note, and the bank which had loaned it the money, had a separate agreement whereby the bank would not seek to enforce the note. This arrangement allowed the bank to carry inflated assets on its records, thereby deceiving the bank examiners as to the bank's true condition. No indication of this arrangement was, for obvious reasons, entered on the bank's books. When FDIC granted insurance protection to the bank, it relied upon the bank's records as they facially appeared. When the bank became insolvent, FDIC sought to enforce the note against D'Oench, which raised the affirmative defense of inadequate consideration based upon its "side agreement" with the bank.

The Supreme Court held that the note was, as a matter of Federal public policy, enforceable in the hands of FDIC. (315 U.S. 447, 459, 86 L. Ed. 956, 963, 62 S. Ct. 676, 680.) Justice Douglas, speaking for the court, said:

> "Plainly one who gives such a note to a bank with a secret agreement that it will not be enforced must be presumed to know that it will conceal the truth from the vigilant eyes of the bank examiners. *** Moreover, as we have seen, the inability of an accommodation maker to plead the defense of no consid-

eration does not depend on his commission of a penal offense. The test is whether the note was designed to deceive the creditors or the public authority or would tend to have that effect." 315 U.S. 447, 460, 86 L. Ed. 956, 963, 62 S. Ct. 676, 680-81.

Justice Douglas further stated that in "this type of case" "it would be sufficient that the maker lent himself to a scheme or arrangement whereby the banking authority *** was or was likely to be misled." (315 U.S. 447, 460, 86 L. Ed. 956, 963-64, 62 S. Ct. 676, 681.) Even if the maker of a note was not a participant in the particular transaction whereby FDIC acquired the note or if he was ignorant of such transaction, nevertheless the maker in *D'Oench* "was responsible for the creation of the false status of the note in the hands of the bank ***. If the secret agreement were allowed as a defense in this case the maker of the note would be enabled to defeat the purpose of the statute by taking advantage of an undisclosed and fraudulent arrangement which the statute condemns and which the maker of the note made possible." (315 U.S. 447, 461, 86 L. Ed. 956, 964, 62 S. Ct. 676, 681.) *D'Oench* could not, therefore, assert its affirmative defense against FDIC.

In 1950 Congress codified the rationale of *D'Oench* in 12 U.S.C. sec. 1823(e).[5] Both *D'Oench* and section 1823(e) have been applied numerous times to effectuate the public policy interest of not permitting "secret agreements" as a defense against FDIC when FDIC is carrying out its statutorily-mandated duties to protect depositors. *Howell v. Continental Credit Corp.* (7th Cir. 1981), 655 F.2d 743, 746, and cases therein cited.

In *FDIC v. Meo* (9th Cir. 1974), 505 F.2d 790, however, the court concluded that *D'Oench* and its progeny would not preclude an affirmative defense to an FDIC action where the defendant was "wholly innocent of wrongful conduct."

In 1962 Meo and three associates executed a promissory note to

---

[5]12 U.S.C. sec. 1823(e) (1982) in pertinent part provides:

"No agreement which tends to diminish or defeat the right, title or interest of the Corporation (FDIC) in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank." See *Howell v. Continental Credit Corp.* (7th Cir. 1981), 655 F.2d 743, 746.

the San Francisco National Bank (SFNB) which was to enable them to acquire *1000 shares of SFNB common stock*. SFNB failed properly to execute the order for common stock. Instead, SFNB directed its broker to issue and transmit *1000 voting trust certificates* in the name of the purchasers. Meo at no time viewed the trust certificates which remained in the possession of SFNB as security for the loan and was not aware of the incorrect manner in which the order had been executed. (505 F.2d 790, 791.) Meo's note remained an asset of SFNB until SFNB's insolvency at which time FDIC was appointed Receiver. FDIC filed an action to recover on the note and Meo asserted the affirmative defense of "lack of consideration" based on the incorrect manner in which the stock order was allegedly executed.

The court in Meo found that, under the circumstances of that case, FDIC's reliance on *D'Oench* and its progeny was misplaced. The court, citing *D'Oench*, determined that it had not been established that Meo "lent himself to a scheme or arrangement whereby the banking authority *** was or was likely to be misled." (*FDIC v. Meo* (9th Cir. 1974), 505 F.2d 790, 792.) Meo was found to be "wholly innocent of the wrongful action of SFNB" and "not negligent in failing to discover the manner in which the stock order was actually executed." (505 F.2d 790, 792.) The court stated:

> "We conclude that a bank borrower who was neither a party to any deceptive scheme involving, nor negligent with respect to, circumstances giving rise to the claimed defense to his note is not estopped from asserting such defense against the bank receiver." (505 F.2d 790, 793.)

In the case at bar, where summary judgment was entered by the trial court in favor of FDIC, defendants had no opportunity, as did defendant in *Meo*, to establish that they were neither a party to a "deceptive scheme" nor negligent in failing to discover the alleged fraudulent acts of the bank officer. A careful review of the total record in this case and the uncertainties underlying the motives for and the execution of the December 5, 1978, guaranty instruments compel us to conclude that there exists disputed material issues of fact which warrant resolution. We believe defendants should be accorded an opportunity to prove their affirmative defense prior to judgment. In our opinion, therefore, the trial court's entry of summary judgment in favor of FDIC was premature.

Because of this conclusion, we find it unnecessary to address defendants' further contention that the guaranty forms were voidable because they were issued "in blank" and their terms were never completed. Such contention can more appropriately be considered at trial.

For the foregoing reasons we reverse the action of the trial court and remand the case for trial in accordance with the views expressed herein.

Reversed and remanded.

HARTMAN, P.J., and DOWNING, J., concur.