**FEDERAL SAVINGS AND LOAN IN-
SURANCE CORPORATION, Plaintiff,**

v.

**Roberto MAIO, Defendant.**

**No. C89–0323–DLJ.**

United States District Court,
N.D. California.

May 26, 1989.

Catherine A. Gaudreau of Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., for plaintiff.

Robert Maio, pro se.

**ORDER GRANTING PLAINTIFF'S MO-
TION TO DISMISS COUNTERCLAIM
AND STRIKE AFFIRMATIVE DE-
FENSES**

JENSEN, District Judge.

Plaintiff's motion to dismiss defendant's counterclaim and strike defendant's affirmative defenses was heard by the Court on May 17, 1989. Appearing for plaintiff was Catherine A. Gaudreau. Defendant appeared *in pro se.*

The Federal Savings and Loan Insurance Corporation ("FSLIC") in its capacity as receiver of Centennial Savings ("Centennial") filed this declaratory action to collect upon a promissory note for $37,500.00 executed by defendant Roberto Maio on May 30, 1984. Defendant was employed by Centennial as an internal auditor when he executed the note. There is currently $22,-755.59 due on the note in addition to interest accruing since February 1, 1989.

FSLIC became the receiver for Centennial on April 24, 1987, after the Savings and

Loan was declared insolvent. FSLIC took control of all of Centennial's assets in order to liquidate the Savings and Loan's financial resources. Defendant has refused to continue to make monthly payments on the note despite the FSLIC's requests for payment.

Defendant contends that the note is voidable because of the circumstances surrounding its execution. Maio alleges that he agreed to sign for the note only after former Centennial president Erwin Hansen requested that he open up a line of credit with Centennial. Defendant claims that he was told by Hansen and other Centennial employees that: (1) he would never have to pay off the loan as the proceeds from the loan would be used to purchase shares of Centennial stock which would be immediately sold to investors; (2) at the time the note was issued, Centennial was solvent with a stock value of $45 per share; (3) he would be fired from his position at Centennial if he refused to open the line of credit; and (4) other Centennial officers, including the general counsel, were going to sign promissory notes. Following the execution of the note, Maio contends that he never received the stock he was promised or any other consideration for signing the promissory note. In addition, defendant claims that the representations made to him by Hansen and others to induce him to sign the note were false.

In his answer to plaintiff's complaint, defendant asserts the following affirmative defenses: (1) lack of consideration; (2) coercion or undue influence; (3) misrepresentation; (4) estoppel; (5) unclean hands; and (6) failure to state a valid cause of action. Maio also filed a counterclaim seeking recession of the note, actual and general damages, costs, attorneys' fees and punitive damages in the amount of $500,-000.00. Plaintiff moves the Court to dismiss defendant's counterclaim and strike the affirmative defenses from his answer.

After review of the briefs and oral argument submitted by the parties and the applicable legal standard, the Court hereby GRANTS plaintiff's motion to dismiss defendant's counterclaim and to strike defendant's affirmative defenses.

## I.

In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the United States Supreme Court developed the *D'Oench* doctrine. The holding of the *D'Oench* Court was summarized by the Ninth Circuit in *FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974):

[*D'Oench*] involved a note, regular on its face, executed by defendant, an accommodation maker. The note was given to the bank to conceal certain irregularities from the bank examiners, and at the time the note was executed the bank agreed that the note would not be collected and that all interest payments made would be repaid. After the bank closed, FDIC acquired its assets and sued to collect on the note. At trial, the maker contended that the note was given without consideration, and that the secret agreement by the bank was enforceable against FDIC. Noting that federal policy protects FDIC and the public funds which it administers against misrepresentations as to bank assets, the Supreme Court held that the accommodation maker was estopped from asserting either of these defenses.

*Meo*, 505 F.2d at 791–92 (citing *D'Oench*, 315 U.S. at 461, 62 S.Ct. at 681).

The *D'Oench* doctrine is codified in 12 U.S.C. section 1823(e) as follows:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FSLIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation [FSLIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, con-

tinuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e) (1980).

Although section 1823 is not applicable to both the FSLIC and the Federal Deposit Insurance Corporation ("FDIC"), courts have consistently held that the *D'Oench* doctrine applies equally to both government agencies. *FSLIC v. Musacchio*, 695 F.Supp. 1044, 1051 (N.D.Cal.1988) (cases cited therein). This doctrine allows a federal agency to "rely on and enforce the written terms of an obligation owed to a failed financial notwithstanding an attempt by the debtor to preclude liability by asserting an agreement outside the note." *Musacchio*, 695 F.Supp. at 1049. Under *D'Oench*, a party is precluded from asserting that an instrument was executed through "fraud in the inducement" in an action by the FSLIC. *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987). In other words, while defenses asserting that a note is "void" because it was obtained through "fraud in the factum" are still available under *D'Oench*, defenses alleging that a financial instrument is "voidable" are precluded. *Langley*, 108 S.Ct. at 402. This interpretation of the *D'Oench* doctrine is consistent with the policy behind the doctrine of allowing "federal and state examiners to rely on a bank's records in evaluating the worth of the bank's assets" and ensuring "mature consideration of unusual loan transactions by senior bank officials, and prevent[ing] fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." *Langley*, 108 S.Ct. at 401.

The crucial factor in determining whether the *D'Oench* doctrine applies in a given case is "whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect. It would be sufficient [to find that *D'Oench* applies] ... that the maker lent himself to a scheme whereby the banking authority ... was or was likely to be misled." *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 680; *see also FDIC v. First Nat'l Finance Co.*, 587 F.2d 1009, 1012 (9th Cir.1978); *Musacchio*, 695 F.Supp. at 1051. "It is not necessary for the accommodation maker to have knowledge of the specific scheme or fraudulent arrangement" for the doctrine to apply. *First Nat'l Finance Co.*, 587 F.Supp. at 1051.

In the present case, plaintiff's affirmative defenses and counterclaims are precluded by *D'Oench* for the following reasons:

1) Failure of Consideration—defendant contends that because he did not receive funds or stock in consideration for signing the note, the note is not enforceable. A similar argument was rejected in the *D'Oench* decision, 315 U.S. at 447, 62 S.Ct. at 676, and in its progeny. *Langley*, 108 S.Ct. at 401–02; *First Nat'l Finance*, 587 F.2d 1011–1012; *Musacchio*, 695 F.Supp. at 1050–1052; *but see FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974) (failure of consideration found to be a valid defense when the note maker was completely unaware of the bank's failure to provide proper consideration until after the bank had failed).

Even accepting defendant's assertions that he was unaware of Centennial's scheme to defraud FSLIC investigators, it is clear that defendant "lent himself" to a scheme that was designed to mislead FSLIC investigators. This transaction involved a "secret side agreement" that is not incorporated in the terms of the note itself, and therefore is not enforceable. Under these facts, this case falls into the line of cases following the *D'Oench* decision rather than the exception to this doctrine for innocent investors carved out in *Meo*. Accordingly, defendant's affirmative defense of failure of consideration is stricken from defendant's answer.

2) Duress or Undue Influence—Maio alleges that he was threatened with the loss of his job if he refused to sign the note. Under California law, a contract made under duress is merely voidable, not void, by operation of law. Cal.Civ.Code §§ 1566 and 1567. Accordingly, under *D'Oench*, this is not a defense to enforcement of the note. This affirmative defense is therefore also stricken.

3) Misrepresentation—Defendant claims that there was fraud in the inducement as

he relied on the misrepresentations made by Hansen and other Centennial officials in signing the note.

This affirmative defense is also barred by the *D'Oench* doctrine. In *Langley*, the Supreme Court expressly held that only "fraud in the factum," not "fraud in the inducement," could be asserted as a bar to a federal agency's action to recover on a note. *Langley*, 108 S.Ct. at 402–03. Therefore, this affirmative defense is stricken.

4) Estoppel—Maio contends that the FSLIC is estopped from enforcing the note because he relied on the false representations of Centennial officials when deciding to sign the note. Again, this argument is cumulative of defendant's other affirmative defenses as it is based on the misrepresentation and secret agreement defenses that are invalid under *D'Oench*. Accordingly, this defense is also stricken.

5) Unclean Hands—Defendant claims that the fraudulent actions of Centennial preclude the FSLIC from obtaining any equitable relief from this Court. This argument is also cumulative. As Defendant is barred from asserting any of the defenses underlying the unclean hands doctrine, he is also prevented from asserting the doctrine itself. This defense is therefore stricken.

6) Failure to State a Claim—Defendant contends that the FSLIC's action fails to state a claim upon which relief can be granted. This defense is without merit. Plaintiff's complaint states a valid claim for enforcement of the note. Accordingly, this affirmative defense is also stricken.

7) Counterclaim—Defendant's counterclaim contains the same allegations that underlie defendant's affirmative defenses. Specifically, the counterclaim asserts that Maio was coerced into signing the note, that he did not receive any consideration, and that there was fraud in the inducement.

It would circumvent the *D'Oench* doctrine to allow defendant to assert legal theories in a counterclaim that are invalid as defenses to the original suit. Because all of the allegations made in plaintiff's counterclaim are prohibited as defenses under *D'Oench*, they cannot form the basis for a counterclaim. Accordingly, defendant's counterclaim is hereby dismissed.

## II.

Therefore, plaintiff's motion to strike defendant's affirmative defenses and dismiss his counterclaim is hereby GRANTED. A status conference will be held in this action on August 23, 1989 at 9:00 A.M. in the chambers of this Court.

IT IS SO ORDERED.