**In re CENTURY CENTRE PARTNERS LIMITED, Debtor,**

**CENTURY CENTRE PARTNERS LIMITED, Plaintiff–Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant–Appellee.**

No. 91–55439.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1992.

Decided July 20, 1992.

As Amended Nov. 5, 1992.

Patrick F. McManemin, McManemin & Smith, Dallas, Tex., for plaintiff-appellant.

Kathleen M. White, Tron & White, Pasadena, Cal., for defendant-appellee.

Before: GOODWIN, NORRIS and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Century Centre Partners, Ltd. ("Century Centre"), a Chapter 11 debtor, brought suit against the Federal Deposit Insurance Corporation ("FDIC") in the bankruptcy court for the Central District of California. Century Centre objected to the FDIC's secured claims and requested that they be reclassified as equity interests (First Claim); sought equitable subordination of the FDIC claims and requested transfer of the FDIC's liens to the debtor's estate (Second Claim); sought turnover of payments by Century Centre to the FDIC as a secured creditor (Third Claim); and alleged breach of the covenant of good faith and fair dealing and of fiduciary duty by FDIC in disapproving a proposed settlement (Fourth Claim).

The bankruptcy court granted summary judgment to the FDIC on the First, Second and Third Claims, declining to do so on the Fourth Claim because material facts remained in dispute. The district court affirmed the judgment of the bankruptcy court. We now affirm the district court.

## FACTS

For purposes of this appeal, and for no other purpose in this litigation, we accept the following facts as true. They are taken from the declaration filed March 25, 1990 by Aron B. Katz, president of the general partner of Century Centre:

In the latter part of 1984 Sunbelt Savings Association of Texas ("Old Sunbelt"), a Texas savings and loan association, entered into negotiations with C–D Investment Co., by which Old Sunbelt acquired the Centroplex Project located on 11.2 acres on the northwest corner of Century Boulevard and Balanca Avenue, Los Angeles, California ("the Properties"). The acquisition by Old Sunbelt was done through its wholly-owned subsidiary, Sun Cal, Inc., whose principal officers, Stanley Castleton and William Dobrowlski, had been employees of Old Sunbelt.

Old Sunbelt was later advised by its independent auditors that continued ownership of the Properties through its subsidiary would result in Old Sunbelt being treated as undercapitalized for regulatory purposes. Old Sunbelt, therefore, arranged a transaction divesting itself of apparent control of the Properties while retaining actual control, as follows: Old Sunbelt sold the stock of Sun Cal to May Cal, Inc., a California corporation wholly owned and controlled by Castleton and Dobrowlski. The financing for May Cal's purchase of all of Sun Cal's stock was furnished by Old Sunbelt and was secured by the stock of May Cal so that Old Sunbelt could continue to control the properties through its control of Castleton and Dobrowlski.

This transaction did not satisfy the criticism of Old Sunbelt's independent auditors and in order "to divest itself of ownership and control" of the Properties, Old Sunbelt arranged for the formation of Century Centre, a Texas partnership, and the transfer of the properties to Century Centre. Century Centre was wholly owned by Sun Cal, Castleton and Dobrowlski. In return for the Properties, Century Centre executed a promissory note and deed of trust to Old Sunbelt.

Even this transaction did not satisfy the criticism of the independent auditors, who foresaw a continuation of the regulatory problems of Old Sunbelt. Consequently, Old Sunbelt concluded that the only solution was "a transfer of a substantial interest" in Century Centre "to a new independent entity." This conclusion was reached some time in the first half of 1986. To carry out this new plan Old Sunbelt approached American Residential Properties ("ARP") with a proposal that ARP purchase a controlling interest in Century Centre. ARP thereupon organized a partnership, Century Centre Associates Limited, a Texas limited partnership ("Associates"). Associates, in turn, acquired an equity in-

terest in Century Centre. At the same time ARP organized ARP Century Centre, Inc., a corporation that became the new general partner of Century Centre. Katz was president of ARP and became president of ARP Century Centre, Inc.

On August 29, 1986 ARP, Sun Cal and Century Centre entered into an Agreement for the reorganization and recapitalization of Century Centre. Simultaneously, ARP Century Centre and Old Sunbelt entered into a Restructured Debt Agreement. These transactions were approved by Old Sunbelt's independent auditors as the new agreement would allow the auditors "to treat the Centroplex Properties and the related transactions as a loan by Old Sunbelt rather [than as] an equity investment by Old Sunbelt." At the same time, according to Katz, Old Sunbelt intended to retain total control over the Properties.

As part of the transactions on August 29, 1986, Century Centre executed a note in the sum of $242,742,175 to Old Sunbelt; a second note in the sum of $25,357,235 to Old Sunbelt; and a third note in the sum of $10,000,000 payable to Old Sunbelt ("the Notes"). Century Centre also made certain related pledges to Old Sunbelt and made or amended certain loan agreements with Old Sunbelt. Century Centre ARP became Century Centre's general partner. Simultaneously Associates made a cash contribution to Century Centre and also executed a note for $28 million in favor of Century Centre. This note was pledged by Century Centre to Old Sunbelt. The note was secured by pledges of Associates' limited partnership interest in Century Centre and a pledge of the general partner's interest in Century Centre.

Through control over the pledged note of Associates and the pledges for this note and through control of Castleton and Dobrowlski, Katz alleges, Old Sunbelt "continued exercising dominance, decision-making control, authority, and final approval of all decisions and issues with respect to the transaction contemplated by the reorganization agreement and related loan documents." Old Sunbelt was "the de facto co-owner" of Century Centre.

In obtaining agreement to the transaction of August 29, 1986, Old Sunbelt had made various misrepresentations to ARP and Associates as to the income and expenses of the Properties. As a consequence, Century Centre found itself unable to service the secured debt and remained in the control of Old Sunbelt because of its inability to service the debt. Day-to-day decisions relating to Century Centre were made at the bidding of Old Sunbelt without consultation with Century Centre or its general partner, ARP Century Centre, Inc.

Late in 1987, despite Old Sunbelt's alleged dominance, Century Centre informed Old Sunbelt that it believed that Old Sunbelt had perpetrated a fraud upon it, ARP, ARP Century Centre and Associates and advised Old Sunbelt that the parties intended to sue Old Sunbelt. Negotiations ensued, leading to a proposed settlement. Old Sunbelt was unsuccessful in meeting one condition of the settlement, namely the acquisition of all liens on the properties. Ultimately, Century Centre was required to file for Chapter 11 protection to avoid foreclosure by a principal lienholder, Security Pacific Bank.

On August 29, 1988 the Federal Home Loan Bank Board placed Old Sunbelt under the control of the Federal Savings Loan Insurance Corporation (FSLIC) as receiver. FSLIC transferred Old Sunbelt's assets to a new entity, Sunbelt Savings (New Sunbelt). New Sunbelt then transferred the assets to FSLIC Corporate, which assigned them for management to the FDIC in its corporate capacity by reason of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183, 253 (1989).

As of the date of Century Centre's entry into Chapter 11, Century Centre owed $160 million on the Notes executed on August 29, 1986.

## PROCEEDINGS

On March 26, 1990 Century Centre filed the four claims previously noted against the FDIC. The FDIC moved for summary judgment, which was granted by the bankruptcy court on the first three claims. The Fourth Claim involved material facts that

were in dispute, so summary judgment was denied. The district court affirmed. Century Centre appeals the judgment in the FDIC's favor.

### JURISDICTION

The FDIC's Fourth Claim was not adjudicated, and the question has been raised by the court on its own motion as to whether the court has a final judgment to review. In bankruptcy proceedings "the rules of finality developed under the general grant of appellate jurisdiction provided in 28 U.S.C. § 1291 (1982) are given a flexible reading." *In re Victoria Station, Inc.,* 840 F.2d 682, 683 (9th Cir.1988). Certain proceedings are "so distinct and conclusive" that final decisions as to them "should be appealable as of right." *Id.* (quoting *Mason v. Integrity Ins. Co.,* 709 F.2d 1313, 1318 (9th Cir.1983)). In the present case the status of the notes is entirely distinct from Century Centre's Fourth Claim, and the decision as to these claims is conclusive. We may properly exercise jurisdiction.

### ANALYSIS

On appeal Century Centre strenuously presses the contention that the Notes were unenforceable because of Old Sunbelt's misrepresentations by means of which Old Sunbelt deceived Century Centre as to the debt service and retained effective control of Century Centre because of Century Centre's dependence on its help. The difficulty with this position is the doctrine established in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), as reinforced in *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).

*D'Oench, Duhme* held that the maker of a note could not present as a defense to its enforcement a secret agreement between the note's maker and the lending bank when the note had been acquired by the federal insurer. *D'Oench, Duhme,* 315 U.S. at 460, 62 S.Ct. at 680. It is this rule as explained by *Langley* that controls here, even though *Langley* itself is addressed to a statute that does not apply here. The statute is the Federal Deposit Insurance Act of 1950, 12 U.S.C. § 1823(e), which provides: "No agreement which tends to diminish or defeat the right, title or interests of the Corporation [the FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation," unless certain conditions are met. The conditions are that the agreement is in writing; has been executed by the bank and the obligor at the time of the acquisition of the asset by the bank; was approved by the bank's directors or loan committee, with the approval reflected in their minutes; and has been continuously an official record of the bank. Interpreting this statute, *Langley* held that fraudulent promises inducing the borrower's execution of a note to a bank fall within the meaning of "agreement" and consequently cannot be used as a defense by the borrower against the FDIC. *Langley v. FDIC,* 484 U.S. 86, 92–93, 108 S.Ct. 396, 401–402, 98 L.Ed.2d 340 (1987).

The statute, § 1823(e), only applies to assets that the FDIC acquires "either as security for a loan or by purchase or as receiver of an insured depository institution." The FDIC has acquired the assets of FSLIC not as its own funds but as their manager. FIRREA, 103 Stat. 183, 253 (1989). These funds have not been acquired by purchase nor as a security, nor have they been acquired by the FDIC being the "receiver" of an insured depository institution. Consequently, 12 U.S.C. § 1823(e) does not apply in this case.

Nevertheless, the dicta of *Langley* interpreting *D'Oench, Duhme* are controlling here. For the same reason that fraudulent promises were held not to be a defense against § 1823 in *Langley,* the misrepresentations of Old Sunbelt are not a defense in the present case. *D'Oench* is intended to protect the federal insurer "in its various functions." *D'Oench,* 315 U.S. at 461, 62 S.Ct. at 681. If Old Sunbelt did make fraudulent promises through Century Centre, there would be no way the bank examiners could detect the fraud from examination of the loan file and the Notes. The bank examiners would assume that the

Notes were assets of the bank. The bank examiners could not know that the Notes were subject to conditions they could not know. Such a situation would effectively deceive the examiners and deny the federal insurer the protection it must receive. "We cannot condone a transaction with the capacity to deceive the banking regulators." *FSLIC v. Gemini Management,* 921 F.2d 241, 245 (9th Cir.1990).

Century Centre contends that it is eligible for the "innocent borrower" exception to *D'Oench,* first articulated by this court in *FDIC v. Meo,* 505 F.2d 790, 792 (9th Cir.1974). The *Meo* exception must be read in light of the general policy of the *D'Oench* doctrine, which "favors the interests of depositors and creditors of a failed bank, who cannot protect themselves ... over the interests of borrowers, who can." *FDIC v. McCullough,* 911 F.2d 593, 600 (11th Cir.1990). *Meo* is properly invoked only by borrowers who are "innocent of any wrongdoing or negligence." *Meo,* 505 F.2d at 793. Century Centre does not qualify for the *Meo* exception, since it could have investigated the financial background of the Properties before signing the loan documents. Since Century Centre did not do so, it lent itself to a scheme or arrangement likely to deceive the government regulators and to injure Old Sunbelt's creditors. A borrower who fails to ensure that the terms of the loan are explicitly incorporated into the obligation where opportunity to do so exists is guilty of "negligence." *Gemini,* 921 F.2d at 245.

Century Centre asserts that the Notes were equity and should be so classified. Old Sunbelt, it asserts, was not its creditor but its co-owner. *D'Oench, Duhme,* it suggests, does not apply in a situation where, in essence, a bank has been dealing with itself. A mere department or extension of Old Sunbelt could not be treated as a borrower; neither, Century Centre contends, can it.

The difficulty with this argument is that Century Centre has offered no evidence to back up its assertions. Its key declarant was Katz, who makes clear that he and Associates were not mere nominees for Old Sunbelt. They were independent actors, who put real money into Century Centre. Even if Old Sunbelt retained equity in Century Centre the general partner was Century Centre ARP, which in terms of equity had "a controlling interest." The control that Old Sunbelt exercised, according to Katz's declaration, was that of a creditor over a needy and subservient debtor.

According to Katz's own declaration, the restructuring of August 29, 1986 was "approved" by Old Sunbelt's independent auditors—an approval that Katz's declaration admits would not have been given unless there was an equity interest in Century Centre distinct from Old Sunbelt's interest. Although Katz now says that he believes that Old Sunbelt "had the undisclosed intent of using ARP Century Centre and Associates as its pawns," there is not even a whisper in Katz's declaration that ARP Century Centre, as the general partner of Century Centre, was coerced into executing the Notes. Consequently, no material issue of fact was raised as to coercion in the execution of the Notes and the hypothetical possibility that this case might be distinguished from the wide variety ruled by *D'Oench, Duhme* does not materialize.

No material fact is in dispute. Summary judgment was in order.

AFFIRMED.

