984 F.2d 254
 COMMUNITY BANK OF THE OZARKS, Plaintiff-Appellee,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, Intervenor-Appellee,
v.
Ronald Alan McKENZIE; Doral Ann McKenzie, doing business as
Ram Building Contractors, Defendants-Appellants.
 No. 92-2060.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 18, 1992.
Decided Jan. 27, 1993.
 
 Teresa Hensley, Raymore, MO, argued (Kenneth C. Hensley on the brief), for defendants-appellants.
 Michelle Kosse, Washington, DC, argued (Steven M. Leigh, Kansas City, MO, and Ann S. Duross, Colleen B. Bombardier and John P. Parker, Washington, DC, on the brief), for intervenor-appellee F.D.I.C.
 Traci J. Turner, Springfield, MO (June Clark and Traci J. Turner, on the brief), for plaintiff-appellee Community Bank of the Ozarks.
 Before FAGG, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 MORRIS SHEPPARD ARNOLD, Circuit Judge.
 
 I.
 
 1
 This case arises from foreclosure on several loans that financed a land development project located on three consecutively numbered (and apparently adjoining) lots of the Indian Point development in Sunrise Beach, Missouri. In the initial transaction, Ronald McKenzie and his wife, Doral, (Appellants) executed a promissory note in favor of Lakeland State Bank (Lakeland), owner of the lots in question, and the McKenzies delivered to Lakeland, as security for this first note, a deed of trust on certain property they owned. In a letter dated contemporaneously with the loan but that never became a part of the bank's records, Lakeland agreed to renew and extend the note, "providing that all payments and agreements to the note have been handled in a satisfactory manner."
 
 
 2
 Lakeland subsequently deeded to the McKenzies the three Indian Point lots and advanced them additional funds for construction on the property. The McKenzies executed a second promissory note payable to Lakeland and delivered as security for the loan a deed of trust covering the property. Lakeland covenanted that it had good and marketable title to the property described in the deed and that title insurance had been secured and a title search performed. As in the quitclaim deed by which the property had been conveyed to Lakeland, however, neither the deed by which Lakeland transferred the property to the McKenzies nor the deed of trust in favor of Lakeland included a 20-foot section running through the property. Lakeland later made a third loan to the McKenzies, also for improvements to the Indian Point property. The McKenzies executed a third promissory note payable to Lakeland and delivered a second deed of trust on the property.
 
 
 3
 Apparently because the 20-foot strip was omitted from the McKenzies' lots, buyers were uninterested in the developed property. The McKenzies assert that because the title difficulties caused them to be unable to pay on the notes, Lakeland officials promised to hold the notes until the property sold. The McKenzies executed extension agreements for the second and third notes, but subsequently defaulted on each of them.
 
 
 4
 About a year after the loan extensions, the Missouri Commissioner of Finance declared Lakeland insolvent and appointed the Federal Deposit Insurance Corporation (FDIC) Receiver for Lakeland. Pursuant to a Purchase and Assumption Agreement, the FDIC sold certain assets and liabilities of Lakeland to Community Bank of the Ozarks (Community Bank). Among the items sold to Community Bank were the three McKenzie notes. Community Bank foreclosed on the deeds of trust securing the three notes and sold the property securing the loans, leaving a large deficiency. Community Bank then filed suit in Missouri state court seeking a deficiency judgment against the McKenzies. The McKenzies' answer raised the defense of failure of consideration, arguing that Lakeland and Community Bank created the difficulties that made the property impossible to sell. The McKenzies counterclaimed for $1.5 million, alleging that Community Bank had failed to honor oral agreements allegedly entered into by the McKenzies and Lakeland. Specifically, the McKenzies alleged that Lakeland (1) agreed not to demand payment until a reasonable time after construction was complete and the McKenzies had an opportunity to sell the property; (2) agreed to advance additional loan proceeds for new construction after the initial construction project was completed and sold; (3) agreed to make reasonable efforts to finance the purchasers of the property upon completion of construction; and (4) agreed to hold the McKenzies harmless from any liens or claims as a result of the acts of the previous owners of the property.
 
 
 5
 The FDIC moved to intervene for the purpose of defending against the McKenzies' counterclaim. The court granted the motion, and the FDIC asserted, as an affirmative defense, that the McKenzies' claims are barred by federal law, including 12 U.S.C. § 1823(e) and the so-called D'Oench doctrine, both of which prohibit unwritten, undocumented claims and defenses against the FDIC or an assignee bank. The case was removed to U.S. District Court, and Community Bank filed motions for summary judgment both on its claims and on the McKenzies' counterclaim. The district court granted summary judgment in favor of Community Bank and the FDIC on both the claims against the McKenzies and on the McKenzies' counterclaims. The rulings were based on 12 U.S.C. § 1823 and the D'Oench doctrine, as discussed more fully below. The McKenzies appealed. We affirm.
 
 II.
 
 6
 This appeal raises only one issue: whether the district court properly applied D'Oench and 12 U.S.C. § 1823 to grant summary judgment in light of evidence that would have created a genuine issue of material fact if not excluded by these laws.
 
 
 7
 In D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court announced a rule of federal common law affording the FDIC protection from defenses typically raised by obligors in the context of collection actions on deficiency suits. The essence of D'Oench is that the FDIC is entitled to rely, to the exclusion of any extraneous matters, on the official bank records that set forth the rights and obligations of the bank and those to whom the bank lends money. This rule reflects a federal policy seeking to protect the FDIC and "public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which ... [it] insures or to which it makes loans." D'Oench, 315 U.S. at 457, 62 S.Ct. at 679. The goal is to allow federal and state examiners to rely on a bank's records in evaluating the worth of the bank's assets, to encourage prudent consideration in lending, and to assure proper recordation of banking acts to guard against collusive or erroneous reconstruction of terms. See Langley v. Federal Deposit Ins. Corp., 484 U.S. 86, 91-93, 108 S.Ct. 396, 401-402, 98 L.Ed.2d 340 (1987). Thus, defenses arising from representations not evidenced in the financial institution's official documents are barred. See id. (barring defense of misrepresentation and fraudulent inducement); Federal Sav. and Loan Ins. Corp. v. Kroenke, 858 F.2d 1067, 1070 (5th Cir.1988) (barring defenses of usury and oral modification of debt); Federal Sav. and Loan Ins. Corp. v. Murray, 853 F.2d 1251, 1254-55 (5th Cir.1988) (barring fraud in inducement and misrepresentation). The test for application of the D'Oench doctrine is not whether a borrower intended to deceive banking authorities, but rather is whether the borrower lent himself to a scheme or arrangement that would likely mislead banking authorities concerning the true status of the bank's assets and liabilities. See Bell & Murphy and Associates v. Interfirst Bank Gateway, N.A., 894 F.2d 750, 753-54 (5th Cir.1990); Beighley v. Federal Deposit Ins. Corp., 868 F.2d 776, 784 (5th Cir.1989). The D'Oench doctrine also applies to transferee banks for essentially the same reasons it applies to the FDIC. See Porras v. Petroplex Sav. Ass'n, 903 F.2d 379, 381 (5th Cir.1990) (D'Oench promotes purchase and assumption transactions by offering the purchaser protection from secret agreements); Federal Deposit Ins. Corp. v. Newhart, 892 F.2d 47, 49-50 (8th Cir.1989) (without the protection of D'Oench, the market for assets of a failed bank would be greatly diminished because prospective purchasers would have little or no incentive to acquire their assets).
 
 
 8
 The codification of the D'Oench doctrine is found in Title 12 of the U.S.Code.
 
 
 9
 No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--
 
 
 10
 (1) is in writing,
 
 
 11
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 
 
 12
 (3) was approved by the Board of Directors of the depository institution or its Loan Committee, which approval shall be reflected in the minutes of said Board or Committee, and
 
 
 13
 (4) has been continuously, from the time of its execution, an official record of the depository institution.
 
 
 14
 12 U.S.C. § 1823(e). Section 1821(d)(9)(A) states that failure to meet these requirements provides grounds for summary judgment.
 
 
 15
 Appellants argue, essentially, that D'Oench is unfair, denying a day in court to claims that may have merit. Their arguments regarding the four oral promises recited above are standard yet unavailing in the face of D'Oench, one purpose of which is summary dismissal of such claims.
 
 
 16
 The McKenzies contend, for example, that the behavior of Lakeland officials sufficiently corroborates their assertion of oral "side" agreements so that a jury question arises regarding their existence. Not surprisingly, this argument fails to defeat the D'Oench doctrine. The express requirements of section 1823(e) demand categorical compliance. Beighley v. Federal Deposit Ins. Corp., 868 F.2d 776, 783 (5th Cir.1989). Neither section 1823(e) nor D'Oench is satisfied by inferences drawn from a bank's records. The McKenzies can offer nothing more than a letter they sent to Lakeland stating their "understanding of the agreement." The letter was not, however, in Lakeland's files and therefore fulfills none of the section 1823(e) requirements.
 
 
 17
 The McKenzies also assert that because some employees of Lakeland now work for Community Bank, Community Bank cannot plead ignorance of the undocumented agreements. It is well settled, however, that the FDIC's knowledge of alleged unrecorded representations or agreements does not affect the application of section 1823(e). Langley, 484 U.S. at 93, 108 S.Ct. at 402; Oliver v. Resolution Trust Corp., 747 F.Supp. 1351, 1354 (E.D.Mo.1990), aff'd 955 F.2d 583 (8th Cir.1992).
 
 
 18
 The McKenzies present a slightly more compelling argument regarding Lakeland's representations about the Indian Point property. The McKenzies assert that Lakeland represented orally that the deed conveyed in toto a certain parcel of land, for which the McKenzies signed a promissory note and executed a deed of trust on the land, both in favor of Lakeland. (In fact, the deed did not purport to convey that parcel of land in toto because its description did not include the 20-foot strip running through it.) Based on this discrepancy between what was conveyed and what the McKenzies thought they were receiving, the McKenzies argue failure of consideration and direct our attention to a case which they say represents a new way to analyze D'Oench and section 1823 under such circumstances. In Federal Deposit Ins. Corp. v. Meo, 505 F.2d 790 (9th Cir.1974), the defendant entered into an agreement to purchase stock. Without the defendant's knowledge, the bank instead issued voting trust certificates. Id. at 791. Unaware of the improper execution of his instruction, the defendant signed a new note for his share of the balance due. The Ninth Circuit ruled that D'Oench did not bar the defendant from presenting his defense of failure of consideration, holding that the promissory note was facially invalid because it was based upon a mistaken execution of defendant's instructions. Id. at 793. The McKenzies liken their case to Meo, arguing that just as the voting trust certificates in Meo were void ad initio, so is the deed that Lakeland gave them in return for their promissory notes and deeds of trust.
 
 
 19
 This argument fails, however, because the McKenzies received good and marketable title to precisely the property conveyed by the deed from Lakeland. There was therefore no failure of consideration. The difficulty is that the deed conveyed something less than the McKenzies thought they were getting. They could, however, have discovered this fact by a close examination of the deed, and their failure of consideration argument is therefore unavailing. This case is distinguishable from Meo, moreover, because the McKenzies, by signing documents that included no qualification regarding the omitted strip of land, lent themselves to an arrangement tending to mislead bank examiners. No document in Lakeland's records, including the deed by which Lakeland conveyed the three lots to the McKenzies, purports to convey the 20-foot strip. The McKenzies may be naive in their reliance upon oral promises, but unlike the Meo defendants, the McKenzies are not innocent of negligence. See Meo, 505 F.2d at 793.
 
 
 20
 Finally, we note that the Supreme Court's decision in Langley v. Federal Deposit Ins. Corp., 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), as well as Langley's progeny, tends to limit Meo to its specific facts. Meo has been distinguished in numerous cases, and it has been criticized and discredited by some circuits. Besides, this case is more closely analogous to cases in which defendants have claimed that agreements were induced by fraudulent representations about the underlying loan transaction. In those cases, D'Oench and section 1823(e) have been routinely followed, see, e.g., Langley, 484 U.S. at 91-93, 108 S.Ct. at 401-402; Federal Sav. and Loan Ins. Corp. v. Murray, 853 F.2d 1251, 1254-55 (5th Cir.1988), and we follow them here.
 
 
 21
 The McKenzies also seek to establish the similarity of their case to Howell v. Continental Credit Corp., 655 F.2d 743 (7th Cir.1981), in which the Seventh Circuit declined to apply D'Oench and section 1823 when the obligation that the FDIC sought to enforce was a lease that imposed, in the instrument itself, express rights and obligations on each party. The agreement upon which the FDIC sought to recover in Howell contained provisions that the lessees alleged had been breached by the FDIC's assignors, thereby precluding summary judgment under section 1823 because the provisions relied on were hardly secret. Id. at 747. Appellants argue that this case involves a similar bilateral obligation: the McKenzies assumed an obligation on the property in exchange for good title as warranted by the bank. The obligation upon which the McKenzies appear to rely, however, is an implied oral representation that the property conveyed would include the 20-foot strip. The exception provided by Howell is a narrow one, applying only to obligations that arise "directly and explicitly from the provisions of the [instrument] which the FDIC now seeks to enforce." Howell, 655 F.2d at 747; see also Bell & Murphy, 894 F.2d at 754; Federal Sav. and Loan Ins. Corp. v. Two Rivers Associates, 880 F.2d 1267, 1276 (11th Cir.1989). The McKenzies can point to no explicit written agreement by which Lakeland promised to convey to them the 20-foot strip in exchange for the promissory note and deed of trust. The bilateral obligation argument therefore fails, both as a defense to the suit against the McKenzies and as an asserted basis for their counterclaim.
 
 III.
 
 22
 The district court was correct in concluding that the McKenzies presented no genuine issue for trial, and the grant of summary judgment is therefore affirmed.