[No. G006246. Fourth Dist., Div. Three. July 31, 1989.]

FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff and Respondent, v.
ALBERT DUREAU et al., Defendants and Appellants.

**COUNSEL**

Ernie Zachary Park and Bewley, Lassleben & Miller for Defendants and Appellants.

John J. Wessling for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, J.**—Is the Federal Deposit Insurance Corporation, acting as a receiver for an insolvent bank, protected from an unrecorded oral agreement between the bank and a debtor? We conclude, relying on *D'Oench, Duhme & Co.* v. *F.D.I.C.* (1942) 315 U.S. 447 [86 L.Ed. 956, 62 S.Ct. 676], it is.

I

In June of 1978, Albert and Maryane Dureau, principals of Cal Coast Enterprises, Inc., met with Heritage Bank President Stanley Pawlowski at Pawlowski's office. Cal Coast's banking needs were handled almost exclusively by Pawlowski. Cal Coast received a $100,000 loan, executing a promissory note in Heritage's favor. Contemporaneously with the execution of the promissory note, the Dureaus signed a personal continuing guaranty, not to exceed $250,000, for the indebtedness of Cal Coast. On December 20, Cal Coast executed a second promissory note for an additional $24,620.40.

Of the $100,000 loan, $25,103.89 was repaid; and $16,523.26 of the $24,620.40 loan was repaid. Upon demand by Heritage for the remaining sums, Cal Coast failed to meet its obligations. On July 30, 1981, Heritage filed a complaint against the Dureaus for payment pursuant to the personal guaranties.

On March 16, 1984, Heritage was declared insolvent and ordered closed by the Superintendent of Banks of the State of California. The Federal Deposit Insurance Corporation (FDIC) was appointed receiver. On November 21, the Dureaus filed their first amended answer and cross-complaint in which they raised the affirmative defenses of mistake and misrepresentation. They alleged they executed the continuing guaranty "after it was explained to them by the president of the cross-defendant BANK that the sole purpose of the document was to have in the bank's files a writing showing that the corporation was authorized to borrow said sum from cross-defendant." They maintained the document which they signed, titled "continuing guarantee," was intended only as a corporate resolution and was not meant to personally bind them.

On May 5, 1987, the Dureaus moved for summary judgment, or, in the alternative, for summary adjudication of issues. The Dureaus argued they were rushed at the time they signed the guaranty, as they were about to leave the state and did not read the guaranty. Instead, they relied upon the representations made by Pawlowski, whom they trusted. They offered Pawlowski's August 10, 1984, deposition to support their claim that all parties to the guaranty intended it only as a corporate resolution. Pawlowski testified that, although it was Heritage's normal practice to require a personal guaranty to qualify for a corporate loan, the continuing guaranty signed by the Dureaus was not intended to bind them personally. This understanding, however, was unrecorded.

On June 17, the FDIC, as receiver of Heritage, filed its own motion for summary judgment. Relying on *D'Oench, Duhme & Co.* v. *F.D.I.C., supra,* 315 U.S. 447, the FDIC argued it was protected from the Dureaus' unrecorded understanding with Heritage. In *D'Oench,* the court held the FDIC is protected, for public policy reasons, from "secret agreements" between banks and their debtors. The court noted the basis of these agreements need not be fraudulent. The test, concluded the court, is whether the debtor "lent himself to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled." (*Id.,* at p. 460 [86 L.Ed. at pp. 963-964].)

The Dureaus, relying on *Federal Deposit Insurance Corp.* v. *Meo* (9th Cir. 1974) 505 F.2d 790, maintained *D'Oench* was inapplicable under the circumstances. In *Meo,* the court held application of the *D'Oench* doctrine is dependent upon the existence of an unrecorded agreement. When no "secret agreement" exists, the FDIC enjoys no special protection from a defense asserted by the debtor. The Dureaus contend mutual mistake voided any agreement, secret or otherwise, between themselves and Heritage; consequently, the FDIC had no claim to pursue.

The trial court granted the FDIC's motion for summary judgment, finding the matter fell "within the 'secret agreement' rule set forth in *D'Oench, etc.* v. *Federal Deposit Insurance Corporation,* [*supra,* ] 315 U.S. 441 and subsequent case law as opposed to the line of authority offered by defendants DUREAU as represented by *Federal Deposit Insurance Corp.* v. *Meo* (9th Cir. 1974) 505 F.2d 790."

## II

■ The Dureaus assert summary judgment may not be granted when a triable, material issue of fact exists. We agree. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].) Here, however, there is no dispute of fact. The issue is not whether the Dureaus were told they were personally guaranteeing the bank loan. Rather, we must assume there was a mutual mistake as to the effect of the document and then determine its legal significance.

## III

■ The Dureaus argue the FDIC, when acting as a receiver,[1] is not afforded the special protection delineated in *D'Oench.* The rule of *D'Oench*

---

[1] The Dureaus correctly argue that 12 United States Code section 1823(e) applies only when the FDIC acts in a corporate capacity. As the court in *Federal Deposit Ins. Corp.* v. *McClanahan* (5th Cir. 1986) 795 F.2d 512, 514 noted, however, enactment of section 1823(e) did not preempt the common law rule of *D'Oench* which does not distinguish between corporate and receivership capacity. The court stated, "The discussion of [§ 1823(e)] in the legislative history does not mention *D'Oench, Duhme* [citation], and there is no reason to suppose that Congress intended to forbid the rule of estoppel from being applied when the FDIC sues as receiver of a failed bank. [Citations.]" (*Id.,* at p. 514, fn. 1.)

All further references to section 1823(e) refer to 12 United States Code section 1823(e).

Section 1823(e) states in pertinent part: "No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] . . . ."

applies, however, whether the FDIC acts in a corporate or receivership capacity. (*Federal Deposit Ins. Corp.* v. *McClanahan, supra,* 795 F.2d at p. 516.) When the FDIC takes possession of a failed institution as a receiver, a borrower is estopped from relying on a "secret agreement" to avoid liability to the FDIC.

Upon failure of a federally insured bank, the FDIC has two methods by which it can fulfill its obligation to depositors. ■ One procedure is a "purchase and assumption" transaction in which the FDIC is said to be acting in a "corporate capacity." Essentially, the FDIC persuades a viable institution to "purchase" the failed bank. Such an agreement allows the insolvent institution to be reopened without interruption or loss to any of its depositors. (*Gunter* v. *Hutcheson* (11th Cir. 1982) 674 F.2d 862, 865.) A second option is liquidation. As receiver in a liquidation proceeding, the FDIC pays each depositor up to the insured amount. The FDIC is reimbursed and uninsured depositors and general creditors are paid out of the funds remaining after the lengthy process of liquidation.

■ The *D'Oench* doctrine facilitates the purchase of failed banks. By disallowing a defense based on a "secret agreement," the FDIC can accurately and quickly determine whether the assets transferred to an acquiring bank are well secured. Execution of a purchase and assumption agreement maintains public confidence in the banking system. There is no interruption in banking operations, no specter of closed banks exists, and the depositor experiences a full return. (*Gunter* v. *Hutcheson, supra,* 674 F.2d 862, 865.)

Similar policy considerations are at stake when a bank is acting solely as a receiver. Although depositors of $100,000 or less are fully insured, the return to uninsured depositors and general creditors is dependent upon the amount collected by the FDIC in liquidation. By eliminating defenses based on "secret agreements," the *D'Oench* rule enhances the protection of uninsured depositors and general creditors.

■■■■ ■ The *McClanahan* court explained its rationale for applying the *D'Oench* doctrine when the FDIC acts in its receivership as well as its corporate capacity: "When the FDIC sues in its corporate capacity, a failure to recover from the defendant causes a loss to the FDIC itself; when the FDIC sues as receiver, victory for the defendant will ordinarily mean a loss that is borne or shared by the uninsured creditors or

depositors of the failed bank."[2] (*Federal Deposit Ins. Corp.* v. *McClanahan, supra,* 795 F.2d 512, 516.)

## IV

■ The Dureaus, relying on *Federal Deposit Insurance Corp.* v. *Meo, supra,* 505 F.2d 790, maintain the court erred in granting FDIC's summary judgment motion. *Meo,* however, is distinguishable. In *Meo,* the debtor executed a promissory note in exchange for 1,000 shares of bank stock. Instead of issuing common stock as agreed by the parties, the bank issued voting trust certificates. Because the bank held the certificates as security for the loan, Meo was unaware of the improper execution until after the bank was closed and the FDIC initiated suit. The *Meo* court held there was no "secret agreement" between Meo and the bank which would result in an overvaluation of the bank's assets. Because Meo was not relying on a "secret agreement" as a basis for his defense, he was not estopped from raising failure of consideration.

The Dureaus contend all parties intended the document to be only a corporate resolution. But the understanding between the Dureaus and Heritage provided no notice to the bank examiner. Consequently, valuation of the promissory notes executed by Cal Coast would be skewed and the assets of Heritage overstated.

The distinction between *Meo* and this case is clear. Here, there was no failure of consideration. The Dureaus received what they bargained for when Cal Coast obtained the proceeds of the loan. And there was, as in *D'Oench,* participation in an agreement which allowed the bank to overvalue its assets. In *Meo,* all records regarding the loan were in the possession of the bank; here, the oral understanding was not reflected in the bank's records.

In *D'Oench,* Justice Jackson, in his concurrence, stated the FDIC "succeed[s] only to the rights which the bank itself acquired where ordinary and good-faith commercial transactions are involved." (*D'Oench, Duhme & Co.*

---

[2] Relying on section 1823(e), the Dureaus also contend the FDIC, when acting as a receiver of a state bank, is bound by state law. And California recognizes mutual mistake as a defense.

However, the application of state law is *not* required when, as here, it would "frustrate the specific objectives" of the FDIC and "disrupt commercial relationships predicated on state law." (*United States* v. *Kimbell Foods, Inc.* (1979) 440 U.S. 715, 729 [59 L.Ed.2d 711, 724, 99 S.Ct. 1448].)

v. *F.D.I.C., supra,* 315 U.S. 447, 474 [86 L.Ed.2d at p. 971].) Meo was completely innocent of the bank's improper issuance of voting trust certificates. Consequently, the *Meo* court applied Justice Jackson's good faith standard and concluded "a bank borrower who was neither a party to any deceptive scheme involving, nor negligent with respect to, circumstances giving rise to the claimed defense to his note is not estopped from asserting such defense against the bank's receiver." (*Federal Deposit Insurance Corp. v. Meo, supra,* 505 F.2d 790, 793, fn. omitted.) The Dureaus do not meet this standard. Although they were experienced in business matters, they admittedly did not read the document they signed. Their carelessness, however, does not preclude their liability; they need not have intended to defraud anyone. They lent themselves to an arrangement which would conceal the true nature of the transaction from bank examiners; this is enough to hold them accountable.

## V

Relying on *Langley* v. *Federal Deposit Ins. Corp.* (1987) 484 U.S. 86 [98 L.Ed.2d 340, 108 S.Ct. 396], the Dureaus argue the guaranty is void. Their reliance on *Langley* is misplaced. The Langleys borrowed money from a bank to finance the purchase of land. When they defaulted on the underlying note, the bank brought suit. In their defense, the Langleys claimed the note had been obtained because the bank overstated the amount of land and falsely represented there were no outstanding mineral leases.

While the case was pending, the bank was declared insolvent and the FDIC was appointed as receiver. The FDIC ultimately acquired the Langleys' note, substituted in as plaintiff, and successfully moved for summary judgment.

On appeal to the United States Supreme Court, the Langleys argued fraudulent misrepresentation does not constitute an "agreement" within section 1823(e). The court found the bank's representations constituted fraud in the inducement, and therefore the statute was applicable.[3]

---

[3] Section 1823(e) applies when the FDIC acts in a corporate capacity. (See, *ante,* fn. 1.) The *Langley* analysis, however, is instructive because under *D'Oench,* a debtor is precluded from asserting fraud in the inducement when the FDIC acts as a receiver of a failed bank. "[U]nder the rule of *D'Oench, Duhme & Co.* v. *F.D.I.C.,* 315 U.S. 447, the defendant was estopped from asserting . . . fraud in the inducement when the FDIC, acting as receiver for the failed bank, sued on the note." (*Federal Deposit Ins. Corp.* v. *McClanahan, supra,* 795 F.2d at p. 513.)

"Respondent conceded at oral argument that the real defense of fraud in the factum—that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents, [citations]— would take the instrument out of § 1823(e), because it would render the instrument entirely void, [citations], thus leaving no 'right, title or interest' that could be 'diminish[ed] or defeat[ed].' [Citation.] [The Langleys] have never contended, however, nor could they have successfully, that the alleged misrepresentations about acreage or mineral interests constituted fraud in the factum. It is clear that they would constitute only fraud in the inducement, which renders the note voidable but not void. [Citations.] The bank therefore had and could transfer to the FDIC voidable title, which is enough to constitute 'title *or* interest' in the note." (*Langley* v. *Federal Deposit Ins. Corp. supra,* 484 U.S. 86, 93-94 [98 L.Ed.2d 340, 348].)

Although the bank allegedly misrepresented the value of the land, there was no fraud in the factum: The Langleys knew they were signing a promissory note. Despite the harsh consequences, the court barred them from raising a defense based on fraud in the inducement.

At oral argument,[4] the Dureaus insisted Heritage's representation that they were to sign a corporate resolution and not a continuing guaranty constituted fraud in the factum.[5] They are wrong. They were present at the signing of the continuing guaranty and had every opportunity to read it. They may have mistaken the import of the guaranty as a result of Heritage's alleged misrepresentations. This conduct constitutes fraud in the inducement. The guaranty is therefore voidable and within the scope of *D'Oench.* "If voidable title were not an 'interest' under § 1823(e), the FDIC would be subject not only to undisclosed fraud defenses but also to a wide range of other undisclosed defenses that make a contract voidable, such as certain kinds of mistakes and innocent but material misrepresentations. [Citation.]" (*Langley* v. *Federal Deposit Ins. Corp., supra,* 484 U.S. 86, 94 [98 L.Ed.2d 340, 348-349].)

---

[4] But in their reply brief, the Dureaus argue "where fraud is in the inducement, such as the instant case where misrepresentation went to the nature of what is being signed, the contract is void." (See U.C.C. § 3-201(1), 2 West's U. Laws Ann. 127; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 403, pp. 363-364.) Fraud in the inducement renders a contract voidable, not void.

[5] Fraud in the factum is illustrated and explained in comment seven of the California Commercial Code section 3-305: "[fraud in the factum occurs when] the maker . . . is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that his signature on the instrument is ineffective because he did not intend to sign such an instrument at all."

The policy of *D'Oench* is to retain public confidence in the banking system and to minimize the loss to the depositors and the FDIC when a banking institution fails. Secret agreements between banks and their customers cannot be recognized if this goal is to be achieved.

Judgment affirmed. Respondent to receive costs.

Wallin, Acting P. J., and Parslow, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.