UNITED STATES OF AMERICA, Plaintiff–Appellee,

Louisa Ullah, Claimant–Appellant,

v.

$349,370.09 IN U.S. CURRENCY, Defendant.

No. 00–55785.
D.C. No.CV–99–06410–ER.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 2001.

Decided Nov. 1, 2001.

Before BOOCHEVER, FERNANDEZ, and FISHER, Circuit Judges.

MEMORANDUM *

Louisa Ullah appeals the district court's order granting forfeiture of $349,370.09 in U.S. currency (the "defendant currency"), in which she claims a community property interest. The district court had jurisdiction under 28 U.S.C. § 1345. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

The United States filed the present forfeiture action on June 23, 1999. The parties stipulated in the district court that Ullah's husband, Hameed "Tony" Ullah ("Tony Ullah"), obtained the defendant currency through a fraudulent health care scheme commenced in approximately 1990. Louisa Ullah, a homemaker, was entirely ignorant of her husband's illegal activities. Based on its investigations of Tony Ullah, the United States seized the defendant currency in November and December of 1993. In 1995, Tony Ullah was indicted for money laundering. Shortly thereafter, he fled the country and remains a fugitive.

Based on these stipulated facts, the parties submitted two questions of law to the district court: 1) whether the current forfeiture action is barred by the 5–year statute of limitations, and 2) whether the "innocent owner" defense of former § 981(a)(2) is available to Louisa Ullah as a matter of law.[1] The district court held that the statute of limitations was tolled, and that the "innocent owner" defense was not available to Ullah. Because we conclude the district court erred in tolling the statute of limitations, we need not reach the question of whether the "innocent owner" defense applies to Ullah.

■ Initially, we address the Government's argument that Ullah lacks standing to contest the present forfeiture action because she is not an "owner" of the defendant currency for the purposes of § 981(a)(2). To establish standing, Ullah

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

1. After this case was filed, Congress amended 18 U.S.C. § 981 to eliminate the "innocent owner" defense at issue in this case. *See* Civil Asset Forfeiture Reform Act, Pub.L. No. 106–185, 114 Stat. 202, 206–207 (2000).

need only allege that she has an ownership interest in the defendant currency under California law. *See United States v. Hooper*, 229 F.3d 818, 820 n. 4 (9th Cir.2000); *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1058 (9th Cir.1994). It is undisputed that Ullah's husband acquired the defendant currency during the Ullahs' marriage while the couple was living in California, a community property state. Under California law, this would make the defendant currency presumptively community property. *See* Cal. Fam. Code §§ 760, 751; *see also Hooper*, 229 F.3d at 820.

We find unavailing the Government's argument that Ullah lacks any ownership interest in the defendant currency for the purposes of standing because that currency was acquired by fraud. The Government points out that under California law, a person who "gains a thing by fraud ... is an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Cal. Civ. Code § 2224. Yet we believe this language, and judicial interpretations thereof, indicate that the wrongdoer "owns" the fraudulently-obtained property unless and until the fraud victim successfully petitions a court for an involuntary trust. *See In re Advent Mgmt. Corp.*, 178 B.R. 480, 486–89 (B.A.P. 9th Cir.1995); *cf. Wurzl v. Holloway*, 46 Cal.App.4th 1740, 54 Cal.Rptr.2d 512, 517–18 (Ct.App.1996) (title obtained by fraud in the inducement is voidable but not void); *FDIC v. Dureau*, 212 Cal. App.3d 956, 261 Cal.Rptr. 19, 24 (Ct.App. 1989) (same). In the present case, no court has imposed an involuntary trust on the defendant currency, so the Ullah marital community retains an ownership interest in it. Moreover, as the district court observed, if the Government's position were correct, "the statute of limitations in civil forfeiture cases would never apply to persons who obtained property by fraud or theft, as they would never be able to claim an ownership interest in the property." *Cf. United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 124, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (plurality opinion) (observing that if title never passed to claimants of fraudulently-acquired property, the innocent owner defense would be eviscerated because no one would have standing to assert it). We therefore agree with the district court that Ullah has alleged a sufficient ownership interest in the defendant currency to have standing to contest its forfeiture.

We next review the district court's decision to toll the statute of limitations and allow the present forfeiture action to proceed. Although a district court's decision on equitable tolling of a statute of limitations is usually reviewed for an abuse of discretion, *de novo* review of the legal question is appropriate here because all relevant facts are undisputed. *See Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1175 (9th Cir.2000).

The statute of limitations for civil forfeitures is five years. 19 U.S.C. § 1621. The present forfeiture action was commenced on June 23, 1999, approximately five and one-half years after the Government's initial seizure of the defendant currency. A previous civil forfeiture action against the defendant currency, commenced within the statute of limitations (in 1997), named Tony Ullah as a party in interest, but was dismissed without prejudice due to his absence from the country. The Government's delay in filing the present action was based on its good faith, mistaken belief that Tony Ullah was the only party with an interest in the defendant currency. Because the statute of limitations is tolled with regard to Tony Ullah due to his absence from the country, *see* 19 U.S.C. § 1621(2), the Government postponed its efforts to forfeit the defendant

currency. In the meantime, the statute of limitations lapsed with regard to Louisa Ullah, of whose existence the Government was apparently unaware until June 1999.

In deciding to toll the statute of limitations with regard to Louisa Ullah, the district court assumed that Ullah, as the party asserting the affirmative defense of the statute of limitations, had the burden of proving that the Government reasonably should have taken action against her within the 5–year statute of limitations. Based on this assumption, it concluded that Ullah failed to carry her burden because there was "no evidence on which it could be inferred that the Government knew, or reasonably should have known, that [Ullah] had any interest in defendant currency." However, the district court's initial assumption was erroneous as a matter of law, because it is the plaintiff, not the defendant, who bears the burden of proving whether equitable tolling is appropriate. *See United States v. Marolf,* 173 F.3d 1213, 1218 n. 3 (9th Cir.1999); *Vaughn v. Teledyne, Inc.,* 628 F.2d 1214, 1218 (9th Cir.1980).

■ Applying the correct standard, we must consider whether the Government has carried its burden of demonstrating that the statute of limitations should be tolled. Here, equitable tolling might be appropriate if the Government, despite all due diligence, was reasonably unable to: 1) discover Ullah's ownership interest in the defendant currency prior to the expiration of the statute of limitations, *see Santa Maria,* 202 F.3d at 1178; *Hinton v. Pacif-*

*ic Enterprises,* 5 F.3d 391, 395 (9th Cir. 1993); or 2) proceed with the forfeiture action within the five-year period by publishing notice to unknown claimants in the newspaper. *See* 28 U.S.C. § 2461; Supp. R. Adm. & Mar. Claims C(4); *United States v. Real Property,* 135 F.3d 1312, 1315 (9th Cir.1998). On the other hand, tolling would not be appropriate if the Government was simply negligent. *See Lehman v. United States,* 154 F.3d 1010, 1016 (9th Cir.1998).

Based on the record before us, we cannot conclude the Government has carried its burden. The Ullahs have been married for over 30 years, have three adult children, and lived together openly until Tony Ullah's flight in 1995. Under such circumstances, we find it difficult to believe that the Government could not have discovered, with due diligence, that Tony Ullah was married before the statute of limitations expired.[2] If the Government had known Tony Ullah was married, it also would have been on notice that his wife had a community property interest in the defendant currency, at least to the extent such currency purported to consist of Tony Ullah's earnings or personal funds.[3] Finally, we note that the Government has provided no explanation for its failure to proceed with the forfeiture within the statute of limitations period by publishing notice to unknown claimants under Supplementary Rule of Admiralty and Maritime Claims C(4).

We therefore conclude that the district court erred in tolling the statute of limita-

2. The Government makes much of Louisa Ullah's failure to come forward and make her interest in the defendant currency known before the statute of limitations expired. However, due to an ambiguously-worded stipulation, there is no conclusive evidence in the record that Ullah was aware, prior to the expiration of the statute of limitations, of the

Government's attempts to forfeit the defendant currency.

3. The defendant currency consists of two bank accounts in the names of corporations owned or controlled by Tony Ullah and three cashier's checks, drawn from these accounts, made out to Tony Ullah.

tions, and should have dismissed the present forfeiture action as barred by the statute of limitations. Accordingly, we reverse the district court's judgment forfeiting the defendant currency and remand for further proceedings consistent with this memorandum.

REVERSED and REMANDED.